ACCEPTED
01-14-0799-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/12/2015 5:53:29 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-0799-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
2/12/2015 5:53:29 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS
# FOR THE FIRST DISTRICT OF TEXAS

BARBARA REGINA SCHLEIN,

Appellant,

V.

ANTHONY P. GRIFFIN,

Cross-Appellant.

**Appeal from County Court at Law, No. 2**
**Galveston County, Texas**
**Trial Court Cause No. CV-0069481**

**CROSS-APPELLANT'S, ANTHONY P. GRIFFIN,**
**BRIEF ON APPEAL**

NORMA VENSO
STATE BAR NO. 20545250
ATTORNEY AT LAW
830 APOLLO
HOUSTON, TEXAS  77058
409.789.8661
FACSIMILE NO. 281.286.9990
EMAIL:  nvenso@earthlink.net

Attorneys for Cross-Appellant

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

**APPELLANT**:

BARBARA REGINA SCHLEIN

**APPELLANT'S COUNSEL AT TRIAL COURT LEVEL AND ON APPEAL**:

STEPHEN H. CAGLE, JR.

HEATHER C. PANICK

CHRISTIAN SMITH & JEWELL, L.L.P.
2302 FANNIN, SUITE 500
HOUSTON, TEXAS  77002

**LOCAL COUNSEL AT TRIAL ONLY**

STEPHEN R. "STRETCH" LEWIS, JR.
LEWIS & WILLIAMS, L.L.P.
2200 MARKET STREET, SUITE 750
GALVESTON, TEXAS  77550

**CROSS-APPELLANT:**

ANTHONY P. GRIFFIN

**CROSS-APPELLANT COUNSEL AT TRIAL COURT LEVEL AND ON APPEAL**:

NORMA VENSO
ATTORNEY AT LAW
830 APOLLO
HOUSTON, TEXAS  77058

**TABLE OF CONTENTS**

Page

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . vii

STATEMENT OF THE CASE AND PROCEDURAL HISTORY . . . . . . . . 1

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

POINT OF ERROR NO. 1:   THE FINDING OF NO ACTUAL DAMAGES
ON THE UNCONSCIONABILITY QUESTION
IS FATAL TO THE FINDING OF
ADDITIONAL DAMAGES UNDER
THE DECEPTIVE TRADE PRACTICES
ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

POINT OF ERROR NO. 2:   THE TRIAL COURT ERRED IN NOT
GRANTING JNOV ON THE DECEPTIVE
TRADE PRACTICES QUESTIONS
SUBMITTED TO THE JURY . . . . . . . . . . . . . 46

PRAYER/CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

CERTIFICATION OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . 55

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

APPENDIX ………………………………………………… Appendix 1-101

# INDEX OF AUTHORITIES

**Cases**

*Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.,* 48 S.W.3d 225 (Tex.App.-San Antonio 2001, pet. denied)...................................................... 41, 42

*Brennan v. Manning*, No. 07-06-0041-CV, 2007 WL 1098476 (Tex. App.-Amarillo Apr. 12, 2007)....................................................................... 40, 49

*Cain v. Bain,* 709 S.W.2d 175 (Tex.1986) .........................................................42

*CDB Software, Inc. v. Krell*, 992 S.W.2d 31 (Tex. App.-Houston [1st Dist.] 1998, pet. denied)....................................................................................46

*Chastain v. Koonce,* 700 S.W.2d 579 (Tex.1985) ....................................................52

*City of Keller v. Wilson,* 168 S.W.3d 802 (Tex.2005)...............................................45

*East Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813 (Tex. App.-Fort Worth 2007) .......................................................................................53

*Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392 (Tex. 1991)……… 46

*Greathouse v. McConnell*, 982 S.W.2d 165 (Tex. App.-Houston [1st Dist.] 1998)…………………………………………………………………….40, 50

*Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731 (Tex. App.-Fort Worth 2005)…………………………………………………………………….40, 49

*Jabri v Alsayyed*, 145 S.W.3d 664 (Tex. App. – Houston [14th Dist.] 2004)..........42

*James J. Flanagan Shipping Corporation v. Del Monte Fresh Produce, N.A., Inc.*, 403 S.W.3d 360 (Tex. App. – Houston [1st Dist.] 2013)........................................45

*Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986)........................ 39, 45

*Mazuca and Asssociates v. Schumann*, 82 S.W.3d 90 (Tex. App. – San Antonio (2002) ................................................................................................ 50, 52

*Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706 (Tex. 1997)........................41

*Nast v. State Farm Fire & Cas. Co.*, 82 S.W.3d 114 (Tex. App.—San Antonio 2002, no pet.) ............................................................................................................48

*Phar-Mor, Inc. v. Chavira*, 853 S.W.2d 710 (Tex. App.-Houston [1st Dist.] 1993, writ denied) ..................................................................................................46

*Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442 (Tex.1989) .............................41

*Rangel v. Lapin*, 177 S.W.3d 17 (Tex. App.-Houston [1st Dist.] 2005) .......... 40, 49

*Southwestern Bell Telephone Co. v. Delanney*, 809 S.W.2d 493 (Tex. 1991)........46

*Texas Motor Coach, L.C. v. Blue Bird Body Co.*, No. 4:05CV34, 2005 WL 3132482 (E.D. Tex. Nov. 22, 2005) ......................................................................53

*Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10 (Tex. 1994)..........................................41

## Rules & Statutory Authority

TEX. R. CIV. P. 301 .................................................................................................46

TEX. R. APP. PROC. 25.1  .....…………………………………………………….4

TEX. R. APP. PROC. 38.1(e) ...……………………………………………….vii

TEX. R. APP. PROC. 39..........…………………………………………………..vii

TEX. BUS. & COM. CODE § 17.45 (j)…………………………………… 50

TEX. BUS. & COM. CODE § 17.49 (a)…………………………………….. 46

TEX. BUS. & COM. CODE § 17.49 (c)…………………………….... 40, 48, 52

TEX. BUS. & COM.CODE ANN. § 17.49(f) (g)……………………………. 53

## STATEMENT REGARDING ORAL ARGUMENT

Cross-Appellant requests the opportunity to present oral argument to the Court, pursuant to Texas Rules of Appellate Procedure 38.1(e) and 39. Although Cross-Appellant believes that the trial court's judgment should be affirmed in most parts, save the submissions complained on appeal by Cross-Appellant.

Cross-Appellant believes that oral argument would aid the Court's resolution in this case.

NO. 01-14-0799-CV

## IN THE COURT OF APPEALS
## FOR THE FIRST DISTRICT OF TEXAS

BARBARA REGINA SCHLEIN,

Appellant,

V.

ANTHONY P. GRIFFIN,

Cross-Appellant.

**Appeal from County Court at Law, No. 2
Galveston County, Texas
Trial Court Cause No. CV-0069481**

**CROSS-APPELLANT'S, ANTHONY P. GRIFFIN,
BRIEF ON APPEAL**

TO THE HONORABLE JUSTICES FOR THE FIRST COURT OF APPEALS:

Cross-Appellant, Anthony P. Griffin, hereinafter and sometimes referred to

Cross-Appellant Griffin, submits his initial brief, with respect to his cross-appeal in

this matter. Cross-Appellant submits as follows:

### STATEMENT OF THE CASE AND PROCEDURAL HISTORY

Cross-Appellant brought his original petition on March 14, 2013 against

Appellant, Barbara Regina Schlein (Index on Appeal at Tab 1, CR [Clerk's

Record], at 000003-000009; Cross-Appellant's Appendix, Tab 1; *see also* Plaintiff's Original Petition at *id.* at CR 10-21; Cross-Appellant's Appendix, Tab 2). Cross-Appellant complained that Appellant, a former client, breached her contract of employment by failing to pay his attorneys' fee and costs. The initial pleading also asserted alternative theories of recovery, including quantum meruit, unjust enrichment, fraud, and theft of services (*id.*). Appellant's operative pleading/answer, at that the time of trial, was Defendant's Amended Answer and Counterclaim filed on June 18, 2013 (CR. 00026-00059; Cross-Appellant's Appendix, Tab 3). Cross-Appellant filed a partial motion for summary judgment on September 30, 2013 (CR. at 223-286) and his amended petition on October 4, 2014 (CR 287-292); Cross-Appellant's amended petition dropped all claims save the breach of contract claim (*id., see* first amended petition at CR. at 287-292; see second amended petition at CR. at 628-632; Cross-Appellant's Appendix, Tab 4). The order denying the partial motion for summary judgment was entered on December 27, 2013 (CR. at 420; Cross-Appellant's Appendix, Tab 5). Defendant's Motion for Summary Judgment was filed on January 31, 2013 (CR. at 472-558). The Court likewise denied Defendant's Motion on February 28, 2014 (CR. at 751; Cross-Appellant's Appendix, Tab 6).

The case was called to trial on May 8, 2014 (jury) and was tried on the following days, to-wit: May 7– 9, 12-13, 19, 21-22, 27, 2014 (Reporter's Record

2

[RR.], Master Index, Vol. 1). The jury rendered a verdict on May 22, 2014 (RR. at Vol. 13; Cross-Appellant's Appendix, Tab 7 (jury charge), found at CR. at [SUPP. CLERK RECORD]; Cross-Appellant's Appendix, Tab 8 (verdict confirmation by jury). Cross-Appellant filed his motion to enter a final judgment on June 12, 2014 (CR at 1135-1155); he amended the amended motion on June 13, 2014 (CR. 1166-1186). Contained in Cross-Appellant's motion for judgment as a motion for judgment notwithstanding the verdict on certain unsupported portions of the verdict; the trial court denied the motion notwithstanding and entered a final judgment on June 30, 2014 (CR. at 1208; Cross-Appellant's Appendix, Tab 9; CR. at 1249-1250; Cross-Appellant's Appendix, Tab 10).

Appellant Schlein filed a motion for new trial on July 30, 2014 (CR. at 1209-1224). The trial court denied the motion for new trial on September 11, 2014 (CR. at 1245; Cross-Appellant's Appendix, Tab 11). Appellant filed her notice of appeal on September 26, 2014 (CR. at 1238-1241; Cross-Appellant's Appendix, Tab 12). Cross-Appellant filed his notice of cross-appeal on October 10, 2014 (CR. 1242-1244; Cross-Appellant's Appendix, Tab 13).

This case is properly before this Court.

## STATEMENT OF JURISDICTION

This Court's jurisdiction vests under Rule 25.1, Texas Rules of Appellate Procedure (commenced by filing a notice of appeal from district court judgment).

_____

## STATEMENT OF FACTS

During opening statement, counsel for Cross-Appellant Griffin framed the matter as a simple breach of contract claims, asserting Appellant Schlein failed to pay attorney's fees and costs due and owing to Cross-Appellant (RR. at Vol. 4 at 74, lines 19-25; 75, lines 1-19). "I think the evidence will show that she hasn't paid him a red cent." Cross-Appellant's counsel explanation in opening framed the underlying factual history:

I don't know of anything that she wanted that he failed to do, but we'll wait and see what happens with that. I don't think that you're going to find that Mr. Griffin did anything wrong in this case, except get on his horse and act as a knight for her, who he thought was an abused woman, who was also not getting a fair shake in court and that he took it without getting a fair shake in court and that he took it without getting any money up front because they couldn't and he trusted her all the way through and that to this day he has not been paid a red cent; and yet, when he sues for collection, they now claim that he has malpracticed her in some way. She says that was by him

4

telling her to show up in court for him once.  He denies that.  I have no idea what that's about and that she wasn't kept informed.

*Id.* at 82, lines 9-23.

Appellant Schlein and Cross-Appellant Griffin entered a legal services contract on November 3, 2009 (RR., Vol. 14, pp. 5-14; labeled as Plaintiff's Exhibit 1 (Contractual Agreement) and Plaintiff's Exhibit 2 (cover letter to contract); Cross-Appellant's Appendix, Attachment 14).  The contract explicitly set out the following language:  representation in "all matters concerning the divorce/family related matter/civil issues (tort issues) in a matter styled In the Matter of the Marriage of Barbara Regina Schlein and Robert Schlein; in the County Court at Law, No. 2; Galveston County, Texas; Cause No. 08FD2371 (supra, Plaintiff's Exhibit 1).

The contract required the payment of a retainer of $35,000.00, but also contained a footnote stating, "[c]urrently Petitioner is under an order of the Court that prevents the expenditure of funds without the approval of the Court.  No payment of fees will take place unless and until the Court approves the payment of the retainer amount and/or an order is entered releasing the injunction overbroad scope (can be interpreted to include separate property of Petitioner)."[1]

---

[1]  At the time of the resolution of the divorce the temporary injunction entered by the trial court had ceased being in effect (RR., Vol. 8 at 90, lines 4-25; 9, lines 1-5).

5

The contract also provided the retainer fee should not be interpreted as constituting the full reasonable fee to which the Lawyers may be entitled for services performed pursuant to an award of the Court or settlement (*id.* at unnumbered page 3). The work of Cross-Appellant was billed at $300.00 an hour (*id.* at unnumbered page 4). Cross-Appellant's lawsuit made clear that neither the retainer nor any additional fees and costs had been paid.

Appellant was called as the first witness during the trial; when questioned whether she had paid "a red cent to Anthony Griffin for his services," she responded, "[t]hat is not true." When asked what money has been paid, Appellant explained, "I have paid him in product, which is the same as money" (RR., Vol. 4 at 101, lines 7-12). Appellant went on to explain it was her belief has overpaid "[h]e owes me money" (*id*. at 101, lines 14-21). When the witness was brought to the question of "money", the witness then asked for a definition of money. Appellant then affirmed she stated she has not "paid him cash dollar money. I've paid him in product (*id.* at 102, lines 1-4).

The contract of employment between Appellant and Cross-Appellant was admitted as Plaintiff's Exhibit 1 (*id.* at 104, lines 1-7; Cross-Appellant's Appendix, Tab 14). Appellant testified the contract was executed in person (*id.* at 105, lines 13-25), contained a section relating to the payment of a retainer on hiring A Griffin

Lawyers/Anthony P. Griffin, Inc. (*id*. at 107, lines 5-25; 108, lines 1-2).[2] Appellant testified the contract did not apply to her, although her signature appeared on same. Appellant testified the contract was amended orally (*id*. at 110, lines 18-25; 111, lines 1-6), "it was explained to me differently and that's why we have a letter of explanation of contract and letter agreement [;] otherwise, there would be no purpose for this to have been drawn up" (*id*.). Appellant stated she was given a flat fee of $35,000.00, even though the contract never used the words flat fee. Appellant against restated her position – she had paid by the tender of product, "Peruvian tile" (*id*. at 112, lines 3-10).

And I'll tell you what: $35,000 is a lot more [sic] than $110,000; and I'm a single parent; and trust me, I just didn't have that kind of money.[3] I wasn't

---

[2] Appellant explained Anthony P. Griffin, Inc. was a defunct corporation, and that A Griffin Lawyers was an assumed named used by Anthony P. Griffin, with Anthony P. Griffin being entitled to collect the debts for either entity (RR., Vol. 8 at 86, lines 4-25; 87, lines 1-25; 88, lines 1-15).

[3] Appellant was referred to Appellee by a Marie Trefethern (RR., Vol. 6 at 155, line 21-25). At the time, Trefethern was employed on a part-time basis with the Galveston County District Attorney's Office doing protective orders (*id*. at 156, lines 1-14) and travelled to Appellee's office with Appellant. Trefethern participated in the first meeting.

Appellant had previously been represented by four other lawyers, all family law practitioners (*id*. at 157, lines 7-25; 158, lines 1-9). Trefethern travelled to Appellee's office with Appellant (*id*). Appellant paid her first lawyer, Greg Enos, $21,000.00, for 30 days of work; her second lawyer, Rebecca Reitz, $90,000.00 - $100,000.00, for three to four months; her third lawyer, Marcia Zimmerman, $40,000.00 - $50,000.00, for three months of work; her fourth lawyer, Christopher Beck, some $23,000.00 for four months of work. Beck's payment took place even though the trial court (Judge C.G. Dibrell) had ordered Appellant not to expend any more money on attorneys' fees (*id*. at 158-161, lines 1-25; 162, lines 1-11). Appellant feigned memory problems with regards to what she expended on previous lawyers

7

prepared for that. If he would have billed me or even told me, "Hey, look, you know, I'm going to need some more money," or verbally or billed be, which he said he would do according to his own contract, I would have known. I would've been prepared. The reason for me showing up at his office was to write him a check for $35,000. We're done. That's it.

---

but ultimately concede a figure ranging from $179,000.00 - $250,000.00 (RR, Vol. 5 at 57, lines 11-25; 58-65, lines 1-25; 66, lines 1-17). Trefethern brought Appellant to Appellee's office because the problems she was having in Judge Dibrell's court and the belief the Judge, her spouse's lawyer were personal friends - she felt she was not getting a fair shake (supra, RR, Vol. 6 at 157, lines 7-25). Appellant also expressed dissatisfaction with her current lawyers (Beck), contemplated filing suit against former counsel Reitz over her fee, and made it clear she had already hired an expert willing to testify against Reitz (Lillian Hardwick) (RR., Vol. 7 at 18, lines 8-23). Appellee represented Appellant for some 700 days (RR., Vol. 7 at 10, lines 1-25).

The jury also heard the amount of fees Appellant had incurred and paid to her current trial counsel, Christian, Smith & Jewell, LLP (RR., Vol. 11, at 72). Gary Jewell, an administrative partner with the firm (*id.* at 74, lines 14-25), explained Appellant has incurred and paid $50,638.50 on matters outside of the divorce (*id.* at 83, lines 4-10 (identified these fees as matters started by Anthony Griffin in which his firm finalized). (*id.*) and $369,892.89 for work related to the dispute herein, <u>Griffin v. Schlein</u>, plus $27,541.06 in expenses (*id.* at 84, lines 6-25; 85, lines 1-15). Albeit, Appellant's counsel discounted their bill in front of the jury to $260,000.00, the jury heard the sum did not include the fees being incurred during the trial itself (*id.* at 87, lines 1-25; 88 lines 1-8). This amount did not include the $27,541.06 sought in expenses (id.). This sum did not include any fees paid to local counsel, Stephen Lewis, for his work and appearance at trial (*id.* at 119, lines 20-25; 120, lines 1-25; 125, lines 18-25; 126-129, lines 1-25; 151, lines 14-25; 152, lines 1-25; 153-154, lines 1-25; 155, lines 21-25; 156, lines 1-5).

Thus the fees paid to counsel, prior to Griffin's hire, was between $174,000-194,000.00. The amount paid to trial counsel, after Griffin terminated the relationship because of non-payment was minimally $370,000.00, not including $276,541.06 paid in expenses and an additional sum unknown paid to local counsel. The jury ultimately rejected Appellant's claim for fees against Griffin and awarded Griffin his entire fees and costs incurred, discussed infra.

RR., Vol. 4 at 113, lines 16-25.

Appellant accused Cross-Appellant of backdating his bill – the contract was dated August 5, 2011 (*id.* at 114, lines 11-20). Appellant contended she did not receive the contract until four days after the divorce was final, which was October 28th (*id.*).[4] Appellant said when travelled to Cross-Appellant's office to write the check for $35,000.00, she experienced a "bait and switch" by Cross-Appellant (*id.* at 115, lines 1-4). When asked what a bait and switch was, Appellant explained, "Well, you know, when you're expecting to pay $35,000 - - which I don't know about you guys, but that's a lot of money – that's a ton of money for me being a single parent especially. [$] 111,000 was astronomically mind blowing. I just – I was just shocked. I threw up. I had to go in his bathroom and throw up." *Id.* at 115, lines 5-11). Appellant then told the jury, "If the retainer exceeded $35,000, he would have been billing me during the divorce process; and he didn't do one single bill. So, how would I know" (*id.* at 116, lines 19-25; 117, line 1).[5]

Appellant admitted being required to paid $70,000.00, as interim attorney's fee, to her husband's lawyer (*id.* at 117, lines 2-23), in addition to $40,000.00 as temporary support for her spouse (*id.*). The jury also heard these payments were

---

[4]   Four days after October 28, 2011, for purposes this record, would be November 1st. Appellee denied the assertion of backdating the bill, he testified the bill was mailed August 5, 2011 and was not backdated (RR., Vol. 7 at 24, lines 15-25; 25, lines 1-21).

[5]   No language in the contract between the parties required monthly billing.

because Appellant was accused in the underlying divorce of hiding and wasting community assets (RR., Vol. 6 at 161, lines 9-25; 162, lines 1-11 (spending money on lawyers after injunction by the trial court); 168, lines 1-25; 169, lines 1-4 (attempt by spouse to appoint receiver to protect assets of the community estate, including separate funds in attempt); RR., Vol. 7 at 28, lines 17-25; 29-32, lines 1-25; 33, lines 1-7; 35, lines 14-25; 36, lines 1-11 (preparation for trial revelation deletion from records, hiding funds, refusal to answer; issue of avoiding suborning perjury prior to trial). The following additional exchange in reflective of the testimony at trial:

[NORMA VENSO]

Q. Okay. I'm not asking you about that yet. While the case was pending when Judge Dibrell ordered that you pay the interim attorney's fees of Mr. Schlein, did you ask your lawyer to take any action about that?

…

[BARBARA SCHLEIN]

A. Okay. I'm sorry, what is your question again?

Q. The question is: After Judge Dibrell had ordered you to pay your husband's lawyer while the case was still pending, did you ask Mr. Griffin what could be done about that?

A. I don't recall that conversation; and I don't recall, you know, the divorce,

10

like you said, lasted a few years. I don't recall the time frame, dollar amounts. That would be impossible. Remember, my divorce started in 2008. We're almost in 2015. That as so many years ago, I don't know.

Q. Okay. Did you object to Anthony Griffin filing a mandamus in the Court of Appeals appealing that ruling that you - - appealing it during the time that the divorce was pending an extraordinary remedy, did you object to him trying to get you a remedy for that in the Court of Appeals?

A. I don't recall. There was so much paperwork going on, I just don't remember.

Q. So you don't remember any mandamus being filed by Mr. Griffin and whether – it's just out of your mind?

A. Part of it is I'm not an attorney and I don't know all your legal jargon. And if you said was there paperwork filed, I'd say, "Yeah, there was lots of paperwork filed." But what the paperwork that was filed was called, I'm not a legal expert; and I'm not going to pretend to be; and I just don't know. I don't know what he filed. He never had communication with me so bottom line is: I could never get ahold of the man.

I never knew was going on. His status was horrible. No billing statements ever, not one during the divorce. I might have had an inkling of what was going on if I read it, so the answer is no."

11

*Id.* at 119, lines 10-25; 120, lines 1-25; 121, lines 1-3.

Coupled with Appellant not remembering paperwork related to any mandamus, or any pleadings filed with the courts on her behalf (*id.* at 121, lines 13-25; 122, lines 1-7), she summarily again informed the jury, "He never kept me informed" (*id.* at 122, lines 7-23). Appellant testified Cross-Appellant kept her client files, did not return the same (*id.* at 123, lines 1-5). The Court sustained Cross-Appellant counsel's objection. "I don't recall getting much from him, if anything. I could get ahold of him on the phone let alone get anything from him" – was the consistent tenor of Appellant's testimony (*id.* at 123, lines 12-14).

When asked specifically how Cross-Appellant malpracticed her; Appellant set out a number of allegations:

- He fired me and he would not "give me client file back and I absolutely was beside myself. Here I am fired. Now he wants – he's got a new billing statement for me. I have no attorneys. I have no client file and my house is ready for foreclose on January 2nd and we're hitting the holidays."[6]

---

*Id.* at 132, lines 15-25; 133, lines 1-2 5; 134, lines 1-2 (further testimony that Appellee's failure to tender her file was the cause of the loss of the house in foreclosure). With regards to the allegation of failure to return the client's file, contrary testimony was also heard by the jury, including the testimony of Rita Westerman, Linda Griffin, and Appellee.

Rita Westerman testified she was employed with Appellee for twenty-three years at the time of the trial and remembered Appellant as a client of the office (RR., Vol. 6 at 139, lines 4-25; 140, lines 1-4). Westerman explained she was present in the office when Appellant came to

12

• That Cross-Appellant should have filed an insurance claim on her house under construction at 1628 Enterprise (also same house which was foreclosed on by the County. There was testimony the house was hit by Hurricane Ike and uninsured at the time of the strike).[7] When asked whether she was blaming Cross-Appellant for the foreclosure, Appellant ultimately explained, "I'm not placing blame, but I'm

retrieve her client files (*id.* at 143, lines 1-25; 144, lines 1-25 ("there could have been 30 or 40 boxes of files we had to give her back")).

Linda Griffin identified herself as a relative of Appellee (sister). Griffin testified she worked part-time for Appellee and possessed a law degree, and prior to becoming a lawyer she worked as a court reporter in federal court (*id.* at 123, lines 1-25). She also testified she witnessed Schlein retrieve her files from the office (*id.* at 129, lines 8-25130, lines 1-16).

Appellee Griffin testified the file was returned after preparing the file for pickup (RR., Vol. 7 at 40, lines 10-25; 41, lines 1-25; 42, lines 1-21).

[7] Appellant argued that Appellee should have filed an insurance claim and identified the insurance in effect at the time as Builder's Risk Insurance (RR., Vol. 5 at 27, lines 11-25). Appellant then postured she had "no idea if there was flood or wind. I wasn't' the builder so, you know, he paid for the policy so how would I know that? I don't know. That's what I'm saying. I don't know what policies he had in effect at the time and that's why Anthony got this letter to find out, to subpoena them." *Id.* at 41, lines 4-13. Appellant then admitted he informed Appellant there builder failed to have wind and flood insurance during the hurricane, "Most likely told him, but did I know? No. It's, like I said, I most likely. I don't know. I wasn't the builder." *Id.* at 42, lines 6-10. Appellant also confirmed her previously informing Appellant that the wind and flood insurance expired May 26, 2007 (prior to Ike's landing of September 2008) (*id.* at 43, lines 6-25; 44, lines 1-21; 45, lines 1-22).

Appellee explained that a lawsuit was brought against the builder for not having insurance, per the client's request. There was no wind and flood insurance at the time the Hurricane hit and the Enterprise home suffered substantial damages (RR., Vol. 7 at 11, lines 9-25). Appellee testified he initially learned there was no insurance from Appellant; he was ultimately tendered documents affirming as much. *Id.* Appellee said notion of filing a claim when no insurance was in existence did not make sense (*id.* at 12, lines 18-25; 13, lines 1-25; 14, line 1).

13

saying he contributed to issues at hand and he knows what those issues are" (RR., Vol. 5 at 97, lines 16-25; 98, lines 1-25; 99, lines 1-22).[8] Appellant testified Cross-Appellant should be responsible to her for the sum of $700,000.00[9] on this claim because "I felt like he should have made a claim." When counsel inquired whether this meant the Builder's Risk Insurance, Appellant answered in context of a possible wish, "[o]n whatever insurance policies that he was going to go get from the custodian of records at the insurance company" (*id.* at 52, lines 11-25; 53, lines 1-11).[10]

---

[8] Later in her testimony, Appellant changed her testimony and contended Cross-Appellant advised her not to pay the taxes on the house, "therefore, due to my lawyer's advice, it did foreclose" (RR., Vol. 6 at 13, lines 16-25; 14, lines 1-5). Appellant retreated from this position when her documents revealed she requested Cross-Appellant to negotiate a payment plan on the taxes, which Cross-Appellant accomplished (*id*. at 14, lines 18-25; 15, lines 1-25; 16, lines 1-25; 17, lines 1-24).

[9] When asked to quantify this sum, Appellant explained the sum would be the difference of what she got at the foreclosure sale (received $760,000.00) of the property and the sum $1,550,000. Appellant stood by the $1,550,000.00 even though her own appraiser valued the property, at most, at $724,000.00 – all because of the uninsured storm damage (RR., Vol., 5 at 94, lines 9-25; 95, lines 1-25; 96, lines 1-18).

Appellant then tied herself in a proverbial knot, explaining, "if the builder negligence claim had been made, which would make it $1,550,000.00 and you take the difference between that number and the $760,000, that is a number that you should have been received for that house, not the $760,000 dollar loss" (*id*. at 96, lines 13-25). Appellant admitted a builder's negligence lawsuit was filed, but said she didn't consent to the filing of the claim (*id*. at 96, lines 19-23), that he wants to hold Cross-Appellant Griffin liable for the builder's negligence (*id*. at 96, lines 24-25; 97, line 3), even though she testified she objected to him filing the builder's negligence lawsuit (*id*. at 97, lines 2-4).

[10] In trying to obtain a handle on the malpractice claim, Cross-Appellant's counsel had the following exchange with Appellant. The discussion related to a letter/email drafted by

14

- That Cross-Appellant failed to keep her informed and undertook actions willy-nilly. The notion Appellant was not kept informed took the form of denying receiving any of the multitude of letters, emails, etcetera, keeping her informed (RR., Vol. 5 at 115, lines 4-25; 116-

---

Appellant to Cross-Appellant.

[NORMA VENSO]

Q. Have I offered Plaintiff's Exhibit 75? Let me show you the part of this letter when you are talking about the way Bill De La Garza is treating your lawyer - -

[BARBARA SCHLEIN]

A. Ma'am, can I get a copy of that?
Q. Does No. 2 start with, "Who's in control of this court, Bill or Judge Roberts?"
A. Yes.
Q. "Just read Bill's letter," which you obviously had; is that correct?
A. Yes.
Q. "His language to you is highly condescending and controlling and offensive. Bill makes you look bad to this judge ever[y] chance he gets. You should be offended that Mr. De La Garza treats you with such disrespect and unprofessionalism. I'm appalled and offended that he does this to you because you [,] Anthony are the good guys in this horrible situation that Bill De La Garza has created and continues to create," but you've changed your mind about who the good guy is in this case and now you're asking that Anthony Griffin pay the $700,000 that you say you lost on your house at Enterprise? Are you asking for $700,000 from Mr. Griffin because you think he's malpracticed you?
A. Yes.
Q. **Do you want to explain that again, how he's malpracticed you? You were looking confused.**
A. **Well, I was just trying to make the correlation.**
…
Q. **(By Ms. Venso) When did you change your mind about Anthony Griffin being the good guy.**
A. **I never changed my mind. Anthony Griffin fired me.**

RR, Vol. 5 at 89, lines 15-25; 90, lines 1-24; emphasis added.

15

118, lines 1-25; 119, lines 1-12; 120, lines 7-25; 121-126, lines 1-25; 127, lines 1-4).[11]

---

[11] During Cross-Appellant's testimony, Plaintiff's Exhibits 85 through 117 were admitted into evidence. All such exhibits were identified by Cross-Appellant as letters, emails and documents directed to Appellant keeping her informed with regards to her case (RR., Vol. 8 at 14, lines 10-25; 15-31, lines 1-25; 32, lines 1-21). In addition, Plaintiff's Exhibits 118-136 were admitted reflecting the same type of information (*id.* at 32, lines 22-25; 33-42, lines 1-25; 43, lines 1-9).

Cross-Appellant testified the Appellant was not dissatisfied with his services and that the dispute arose when he refused her offer of her tile and a reduction of his fees and costs. Prior to coming into his office in October, Appellant had drafted a document apologizing for Cross-Appellant not being paid. The document reads in part:

> "I'm sorry you haven't been paid. I thank God every day that you and your staff have stayed with Austin and I. You are obviously passionate about your job. Now I know why people say really good things about you that they do. I wish everyone could read this e-mail and see things how they really are in this case. The Court is bankrupting us, even though I have separate property money to live on."

*Id*. at 46, lines 2-125; 47, lines 1-18; see email at RR., Vol. 15, Plaintiff's Exhibit 83.

Cross-Appellant testified Appellant prevailed in the divorce. The community assets were split 50/50%, with Appellant received the community home (her request to the Court), with a reimbursement order to her spouse of $371,000 (approximately $150,000 less than his share contributed to house) (RR., Vol. 7 at 34, lines 12-22). Albeit the jury found against Appellant her cruelty, adultery and abuse claims (*id*. at 34, lines 20-25; 35, lines 1-10), the 50/50% split and awarding of home to Appellant still took place. In addition, Appellant was able to avoid the payment of attorneys fee to the opposing lawyer ($450,000 claim), reimbursement to her former spouse, contribution to the community estate ($400,000 claim), and avoiding the claim of her having possession of his separate property ($300,000 claim) (RR., Vol. 6, 171, 24-25; 172, lines 1-10). Appellant also received her separate property funds ($600,000 - $800,000.00) (*id.* at 172, lines 15-25). Appellant expressed happiness with the trial, but disappointment with her not receiving funds on the civil tort portions of the verdict in the divorce. Appellant was also happy she received the Enterprise home, in that it is something she requested of the trial court (*id*. at 173, lines 1-25; 174, lines 1-25; 175, lines 1-25).

Appellant also contended Cross-Appellant breached his fiduciary responsibility to her by revealing things she told him in confidence (RR., Vol. 6 at 6, lines 9-13). This claim related to Appellant's contention that Cross-Appellant placed in his original pleadings filed with the Court matters she contends should have been confidential conversations – even though in the same breath she contends the confidential conversation never took place (*id.* at 6, lines 14-25; 7, lines 1-25). Appellant also contended Cross-Appellant defamed her by placing information in the lawsuit claiming she had taken and hidden evidence from the other side in the divorce proceeding - Appellant contended this too as an event never occurred. *Id.*

Appellant admitted Cross-Appellant never tried to bill her for any of the other work he performed for her (RR., Vol. 6, at 30, lines 13-20). And with regards to the allegation by Appellant she paid Cross-Appellant in property, Appellant contended the tile was worth $57,000 and "he had kept it and he's only due and owing $35,000. So the difference is almost $22,000 that he owes me" (*id.* at 33, lines 10-17). Appellant admitted she paid $20,301.88 for the tile (*id.* at 36, lines 1-18).

The jury heard testimony that the valuation of the tile also ultimately was problematic. The tile's value was tendered by a Paulette Varner. Varner identified herself as an interior designer by profession. Varner testified she

attended <u>South</u> Dakota State University in interior design and ultimately finished her degree in interior design at <u>North</u> Dakota State University [sic] (RR., Vol. 11 at 42, lines 8-25; 43, lines 1-5). Varner is the owner of Vstudios, located in the Woodlands area (id. at 43, lines 19-21). She described the tile as venato, from Peru (*id*. at 46, lines 7-25; 47, lines 1-19). Varner appraised the tile at $56,338.85 (*id*. at 52, lines 11-13; *see report* at Defendant's Exhibit 7); testifying the tile has appreciated in value (*id.* at 55, lines 14-25; 56, lines 1-19), because of its rare nature (*id.*). When asked about a sample tile labeled Defendant's Exhibit 82, Varner testified she didn't know where the tile came from, only it was given to her by Schlein and her lawyers (*id*. at 59, lines 13-25). It was her assumption the tile was taken from the Schlein home prior to the tile going to the warehouse (*id*. at 60, lines 1-6). When presented with Plaintiff's Exhibit 150, a tile from the warehouse, Varner stated the tile was not vernato (*id*. at 60, lines 7-25). The jury also heard, the other products/items ordered for the Enterprise home ended up being fraudulent/fake (concrete pilings or columns instead of the travertine columns being delivered) (*id*. at 62, lines 8-25; 63, lines 1-19).

Varner's resume reflected she possessed a master's of architecture from the University of Texas; she said he as a student in 1981, 1982 (*id*. at 58, lines 9-11). . She testified it took her a year and a half to complete the degree (*id.* at 57, lines 2-18) and that the degree was obtained in her maiden name, Ellington. *Id*. Varner

18

stated she is not a license architect, "I passed every section except for structures the first time, and the structures portion I took five times and just didn't pass it" (*id.* at 58, lines 1-8). After Varner's credential were checked, it was determined she never attended the University of Texas (*see* Plaintiff's Exhibit 153; RR., Vol. 12 at 117, lines 18-25; 118, lines 1-25; 119, lines 1-22). The witness' bold face misstatement of her qualifications is something the jury was free to consider.

To support her claims against Cross-Appellant, Appellant called Lillian Hardwick. Hardwick testified she has co-authored a treatise on attorney judicial ethics in 2002 (RR., Vol. 10 at 120, lines 6-25; 121, 1-4). Hardwick explained she is also involved presenting at continuing legal education courses, participation in State Bar Committees (*id.* at 121, lines 1-25) and advising lawyers or law firms on the disciplinary rules (*id.* at 122, lines 2-12).

Hardwick stated she was hired by Appellant to figure out which of the attorney's fiduciary duties might have been violated by Cross-Appellant (*id*. at 122, lines 13-20). Hardwick expressed a view Cross-Appellant violated his duty of loyalty,[12] candor, and confidentiality[13] (*id.* at 123, lines 9-21). In this context,

---

[12] With regards to the duty of loyalty, the witness explained as follows:

> My opinion is that he breached the duty of loyalty in that this agreement, whether taken individually or together, is unconscionable in that it is overreaching and not clear; and that is at the outset of the relationship, the lawyer, of course, knows much more about what's going on and what will be going on than the client does. So it's the lawyer's obligation to set out what's going to happen and particularly how the lawyer is going to be paid in a way that is clear to the client" (*id*. at 126, lines 1-16).

19

Hardwick express a view the sending of only one invoice constituted a breach of fiduciary duty (*id.* at 132, lines 5-25), a view that nothing in the contract allowed for Cross-Appellant to bill for copy cost (*id.* at 133, lines 7-23; 134, line 1 (breach of fiduciary duty to not disclose and then charge for it) ). Hardwick also criticized Cross-Appellant saying he breached the duty of confidentiality (*id.* at 137, lines 7-25). This opinion related to the Appellant's contention her file was not turned over to her and the retention of the tile (*id.* at 137, lines 8-25; 138, lines 1-23). At no point did Appellant submit a question to the jury as to who owned the tile.

On cross examination, Hardwick affirmed she had previously been hired by Schlein in the Reitz representation of Schlein (*id.* at 141, lines 7-25). Hardwick testified she never talked to Schlein, only to her lawyers and documents provided

---

Hardwick explained her problem with the agreement related to the language identifying stating "all matters concerning this divorce," whether they were civil issues, tort issues, whatever (*id.* at 127, lines 2-17). Hardwick expressed the opinion that "it gives the lawyer an opportunity later on to do exactly what I said, to interpret it to his or her advantage down the road (*id.* at 127, lines 21-25).

Cross-Appellant testified his bill was segregated and the only matter billed was the divorce matter and all other matters performed by Cross-Appellant were not billed (RR., Vol. 8 at 61, lines 22-25; 62-64, lines 1-25). Even in this context, Appellant's counsel incorrectly held out to the expert, "Mr. Griffin has testified that there is no limit as to what his fees might be that Ms. Schlein has to pay under this agreement" (*id.* at 129, lines 18-25; 130, 1-4). The expert then responded "Yes, because by no means do I think this agreement communicates that. So if that's what he intended to communicate, then he has breached the duty of communication, as well as created an overreaching or unconscionable agreement that does not clearly convey that at the outset." *Id.*

[13] This was explained as "Mr. Griffin revealed in a pleading, which is public things that Ms. Schlein told him in attorney-client communications; and they are set out there now for all the world to see" (*id*. at 159, lines 10-15).

20

by the lawyers (*id.* 142, lines 1-25). "We talked about what I would testify which is breach of fiduciary duty" (*id.* at 142, lines 19-24). Hardwick admitted never sitting first chair at trial, never handling a divorce, and never having done free legal work for someone under order not to spend any more money on attorney's fee (*id.* at 143, lines 20-25; 144, lines 1-4). The witness admitted she was expressing an opinion with regards to Cross-Appellant's standard of care in a practice-specific area of divorce, "I am not a divorce lawyer; and I'm not here to testify about the standard of care or to give it for you" (*id.* at 146, lines 2-13).

When asked about the home not having insurance, Hardwick stated she recalled the discussion, "I'm not sure that I know the difference between them" (*id.* at 147, lines 12-25; 148, lines 1-6). When asked whether Cross-Appellant violated his duty by failing to file a builder's risk claim on behalf of Ms. Schlein, the witness backed away again, "Whatever he did or did not do, I'm saying it was his duty to explain to her what he was doing and why he was doing it or why he was not doing it" (*id.* at 148, lines 9-21). The expert however is clear in imposing on Cross-Appellant a standard of requiring him to pursue the charges and objectives or Appellant, or an explanation of why not (*id.* at 149, lines 10-25; 150, lines 1-2).

[NORMA VENSO]

Q.   But if she did get an explanation, then there was no breach of fiduciary duty?

21

[LILLIAN HARDWICK]

A.     Assuming the explanation classified that for her, yes; and it's for the jury to decide whether that explanation was sufficient.

*Id*. at 150, lines 3-7.

Hardwick expressed no opinion whether the house being foreclosed was Cross-Appellant fault (*id.* at 151, lines 8-11). She expressed no opinion on the email from Schlein expressing satisfaction with Griffin's work and Schlein regrets Griffin had not been paid (*id.* at 154, lines 1-6), nor the work performed by Griffin with regards to her taxes and working out an arrangement (*id.* at 154, lines 7-13). Hardwick also expressed no opinion whether there was wind or flood insurance (*id.* at 155, lines 1-4).

[NORMA VENSO]

Q. So you're not here saying there was a viable insurance claim. You're just saying that if what the other side tells you is true, that Mr. Griffin didn't explain to her enough of why an insurance claim wasn't file?

[LILLIAN HARDWICK]

A. Yes.

Q. And you're calling that a breach of fiduciary duty?

A. Yes.

Q. The failure to explain.

22

A. Yes, it's the breach of duty of loyalty and of communication.

Q. Would you agree with me that in a legal malpractice claim, it is the burden to prove that there would have been a different result but for the negligence of the lawyer?

A. It depends on how you define legal malpractice. I think you're talking about negligence cases.

Q. Yes, I am.

A. I'm here testifying about breach of fiduciary duty.

*Id.* at 156, lines 4-25.

There was a series of witnesses who were called by Cross-Appellant after his character was moved into evidence, over objection.[14] Those witnesses included

---

[14] During Cross-Appellant's testimony, the Court allowed Appellant to inquire of Cros-Appellant sanctions by State Bar of Texas, regarding client complaints. With respect to a client named Guzman (RR., Vol. 10, at 55, lines 15-25; 56, lines 1-25; 57, lines 1-25 (testimony entered in agreement with State Bar on sanction, probated suspension). Likewise in matter involving a client named Cusick, Cross-Appellant agreed to a public reprimand, voluntarily sent a letter of apology to Mr. Cusick (*id.* at 59, lines 7-25; 60, lines 1-25; 61, lines 10-24). And finally, in regards to a client named Vereen, a judgment of public reprimand for neglecting the client's matter (*id.* at 61, lines 23-25; 62, lines 1-25; 63, lines 1-25). Cross-Appellant explained his office was affected by Hurricane Ike, receiving 4 to 5 feet of water, destroying one-half of open and pending files (lost or destroy) (*id.* at 68, lines 13-25; 69, lines 1-15). With regards to large litigation files., stored in a warehouse, the warehouse received eight (8) feet of water, with the destruction of one-half of those files destroyed (*id.*).

Michael Landolt,[15] Helen Truscott,[16] Mary Luna,[17] Joanna Mora,[18] and Lloyd Gilliam.[19]

---

[15] Landolt explained he is a current client of Cross-Appellant. Landolt is a wealth financial manager by profession, his wife the owner of an Anheuser-Busch distributor (RR., Vol. 162, lines 14-25). Landolt stated Cross-Appellant represents he and his wife in a suit against their homeowner's association. Landolt testified he was kept well-informed by Griffin and had no problem finding out about his case (*id.* 10 at 162, lines 14-25; 163, lines 1-22). Landolt paid an initial retainer of $15,000.00 and ultimately a fee of $70,000.00 (*id.* at 163, lines 22-25; 164, lines 1-11).

[16] Truscott identified herself as a practicing attorney, having been licensed since November, 1980 (RR., Vol. 11 at 7, lines 19-25). Truscott is a graduate of the University of Texas School of Law, graduating in 1980 (*id.* at 8, lines 23-25; 9, lines 1-2), a former assistant district attorney in the Galveston County District Attorney's Office (*id.* at 9, lines 3-15) and currently has a practice which concentrates on family law (*id.* at 8, lines 5-6). Truscott affirmed she appeared at the deposition of Barbara Schlein at a time Cross-Appellant was required to be elsewhere (*id.* at 9, lines 16-25; 10, lines 1-23).

[17] Mary Alice Luna identified herself as a former client of Cross-Appellant. Luna is a retired Registered Nurse, a bachelor's degree in nursing from the University of Texas, a Master's degree from HBU, a teaching certificate from Prairie View A & M (RR., Vol. 11 at 13, lines 1-16). Luna testified she hired Cross-Appellant in a real estate dispute. He testified with regards to Griffin's character (good) and his work as a lawyer (kept informed) (*id.* at 13, lines 19-25; 14, lines 1-25; 15, lines 1-3).

[18] Joanna Mora identified herself as a former client of Cross-Appellant. Mora hired Griffin because of his reputation and after her mother read an article in *Texas Monthly* (RR., Vol. 11 at 154, lines 22-25; 16, lines 1-11). Mora hired Cross-Appellant in a divorce matter, after he explained he was not a family lawyer (*id.* at 16, lines 11-19). Griffin explained he could refer her to other lawyer, but she decided to hire because of her husband being in law enforcement (*id.* at 16, lines 15-25; 17, lines 1-25). She, Mora, too testified with regards to Cross-Appellant's character (kept informed and reliable) (*id.* at 18, lines 10-21).

[19] Lloyd Gilliam identified himself as a current client of Cross-Appellant. Gilliam is a self-employed in the oil industry and hired Cross-Appellant in a nuisance case along with 28 other families in the Santa Fe, Texas area (RR., Vol. 27, lines 23-25; 28, lines 1-21). Gilliam explained the case is at the Houston Court of Appeals for the second time (*id.* at 29, lines 4-25) and attested to Cross-Appellant's character even in cases where politics may intrude in the case (*id.*). He too testified Cross-Appellant has kept him informed and to Cross-Appellant's good character (*id.* at 30, lines 1-25; 31, lines 1-18).

24

After the admission of character related evidence, Cross-Appellant testified with regards to his own character, explaining he was licensed on May 15, 1978. Cross-Appellant identified his previous work included serving as General Counsel for both the Texas Civil Liberties Union and the NAACP, both on a statewide basis. Cross-Appellant has served as an adjunct professor at the University of Houston Law Center, teaching both civil and criminal trial advocacy (*id.* at 79, lines 4-25). Griffin explained he has published in both legal and non-legal circles (*id.* at 80, lines 8-20), and was the first recipient of the Justice William Brennan Award for his representation of the Texas Knight of the Ku Klux Klan (*id.* at 80, lines 8-25; 81, lines 1-25; 82, lines 1-9). Cross-Appellant testified his trial and appellate work was throughout the country (*id*. at 82, lines 9-15); in the Schlein matter he filed two mandamuses with the court of appeal (*id.*) - All in an attempt to make the trial process fairer for the client.

Cross-Appellant explained his practice and history created circumstances where at times his enemies became his friends, or his friends became his enemies - depending of the case. He testified that divorces were not a routine part of his practice, an election he made because, "[t]hey're emotionally too hard (*id.* at 83, lines 4-25; 84, line 1; 84, lines 13-25).

Cross-Appellant billed at $300.00 an hour at 352.5 hours, for a bill in the amount of $105,750.00. The copy costs was $18,000.00, the expenses on behalf of

25

the client was $4,399.29 for a total of $128,149.29 (*id.* at 85, lines 14-25; 86, lines 1-6).

Genevieve McGarvey, a licensed lawyer, testified on behalf of Cross-Appellant. McGarvey testified she has known Cross-Appellant since 1991 or 1992 (RR., Vol. 10 at 94, lines 12-25). McGarvey explained her previous career was as a social worker and peace officer. When she worked as a peace officer she was employed by the University of Texas System and rose to the rank of Sergeant (*id.* at 95, lines 1-9). McGarvey is a partner in the firm of McLeod, Alexander located in Galveston, Texas (*id.* at 96, lines 13-15); some twenty five percent of her practice is family *(id.* at 97, lines 20-25).

McGarvey testified she knew Cross-Appellant's reputation in the community, having met Cross-Appellant during litigation styled [Arceaneaux] v. City of Galveston (voting rights dispute) (*id.* at 98, lines 17-25). McGarvey expressed the view the hourly rate and fee of Cross-Appellant was reasonable and necessary (*id.* at 100, lines 11-25; 101, lines 1-25; 102, lines 17-25; 103, lines 1-18). On cross-examination she reaffirmed her view of Cross-Appellant's good character of Cross-Appellant (*id.* at 1054, lines 10-18; 106, lines 1-25; 107, lines 1-25) (expressing the same view even in light of the recent adverse events).

The last witness who testified in Cross-Appellant's case-in-chief was his counsel, Norma Venso. Venso identified herself as being licensed February 1978,

after graduating from the University of Texas Law School in December 1977 (RR., Vol. 10 at 110, lines 17-25). Venso served as a trial lawyer for 17 years prior to being elected to the 56th Judicial District Court, Galveston County, Texas (*id*.). She served as a judge from 1997 to 2004 (*id*. at 111, lines 1-4).

Venso's rate charged was $425.00 an hour. She testified the fee was reasonable and necessary in the Houston Galveston legal market (*id.* at 111, lines 5-13). Her hours billed was 29.5 hours for fees in the amount of $29,962.50 (testifying she cut her hours half). She continued to explain, "The hundred hours that had been in my report, the first hundred hours have been reduced to 70.5 and so adding to that another 69.5; and by the way, we estimated the trial work to be 40 hours, which is way less than what it's actually turned out to be; but that comes up to a total of $59,500.00 (*id*. at 112, lines 6-24).

The trial court granted Cross-Appellant's requested dismissal on the claim directed at the defamation claim (RR., Vol. 12 at 104, line 25; 105-109, lines 1-25; 110, lines 1-16). After the charge conference, the Appellant elected not to submit any questions on the malpractice allegations (RR., Vol. 12 at 103, line 25; 104, line 1-25). The Questions submitted by the Court and the jury answers are set out below.[20] The jury found Barbara Schlein breached the contract in question

---

[20] After the presentation of evidence and arguments of counsel, the Court presented the following questions to the jury and the jury answered in the manner, to-wit:

## QUESTION 1

Did Barbara Schlein fail to comply with the terms of the agreement for legal services dated November 3, 2009, between her and Anthony P. Griffin d/b/a A Griffin Lawyers?

 [Yes]
Answer: _____

## QUESTION 2

Did Anthony Griffin fail to comply with the agreement for legal services dated November 3, 2009?

 …

 [No]
Answer: _____

If you answered "Yes" to both Question 1 and Question 2, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 3

Who failed to comply with the Agreement first?

 [N/A]
Answer: _____

## QUESTION 4

Was Barbara Schlein's failure to comply excused?

 …

 [No]
Answer: _____

If you answered "Yes" to Question 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 5

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Anthony P. Griffin d/b/a A Griffin Lawyers, for his damages, if any, that resulted from

such failure to comply?

…

    a.    Attorneys' fee incurred in the representation of Barbara Schlein in her divorce from Robert Schlein?

ANSWER:  [$105,750.00]

    b.   Costs incurred by Anthony P. Griffin in the representation of Barbara Schlein in her divorce from Robert Schlein.

ANSWER:  [$22,399.29]

If you have answered "Yes" to Question 2, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 6

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Barbara Schlein for her damages, if any, that resulted from such failure to comply?

…

    a.  The reasonable and necessary attorney's fees and costs incurred to complete the divorce matter started but not finished by Anthony Griffin.

ANSWER:  [N/A]

    b.  The reasonable and necessary attorney's fees and costs incurred to complete the other matters started but not finished by Anthony P. Griffin.

ANSWER:  [N/A]

## QUESTION NO. 7

What is a reasonable fee for the necessary services of Anthony P. Griffin's attorney in this case, stated in dollars and cents?

…

    a.  For preparation and trial.
          [$62,866.00]
Answer: _____.

b.  For an appeal to the Court of Appeals.
        [$15,000.00]
Answer:  _____.

c.  For an appeal to the Supreme Court of Texas
        [$25,000.00]
Answer:  _____.

If you answered "Yes" to Question 2, then answer the following question.  Otherwise, do not answer the following question.

## QUESTION NO. 8

What is a reasonable fee for the necessary services of Barbara Schlein's attorney in this case, stated in dollars and cents?

…

a.  For pre-trial preparation and representation in the trial court.

        [N/A]
Answer:  _____.

b.  For representation through the Court of Appeals.

        [N/A]
Answer:  _____.

c.  For representation [through] the petition for review stage in the Supreme Court of Texas.

        [N/A]
Answer:  _____.

d.  For representation in the merits briefing stage in the Supreme Court of Texas.
        [N/A]
Answer:  _____

e.  For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

        [N/A]
Answer:  _____

## QUESTION NO. 9

Did Barbara Schlein substantially rely on her detriment on Anthony Griffin's promise, if any, and was this reliance foreseeable by Anthony Griffin?

…

Answer:       [No]

If you have answered "Yes" to Question 9, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 10

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Barbara Schlein for her damages, if any, that resulted from such her reliance on Anthony Griffin's promise?

…

b.  The reasonable and necessary attorney's fees and costs incurred to complete the divorce matter started but not finished by Anthony Griffin.

Answer:  [N/A][20]

c.  The reasonable and necessary attorney's fees and costs incurred to complete the other matters started but not finished by Anthony P. Griffin.

Answer:  [N/A]

## QUESTION 11

Did Anthony Griffin fail to comply with his fiduciary duty to Barbara Schlein?

As Barbara Schlein's attorney, Anthony Griffin, owed Barbara Schlein a fiduciary duty. To prove Anthony Griffin failed to comply with his fiduciary duty, Barbara Schlein must show:

a.  the transaction and action in question were not fair and equitable to Barbara Schlein; or
b.  Anthony Griffin did not make reasonable use of the confidences that Barbara Schlein placed in him; or
c.  Anthony Griffin failed to act in the utmost good faith or exercise the most scrupulous honesty toward Barbara Schlein; or
d.  Anthony Griffin placed his own interests before Barbara Schlein's, used the advantage of his position to gain a benefit for himself at the expense of

31

Barbara Schlein, or place himself in a position where his self-interest might conflict with his obligations as a fiduciary; or

e.   Anthony Griffin failed to fully and fairly disclose all important information to Barbara Schlein concerning the transaction.

Answer:      No.

If you answer "Yes" to Question 11, then answer the following question.  Otherwise, do not answer the following question

## QUESTION 12

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Barbara Schlein for her damages, if any, that were proximately caused by such conduct?

…

a.   The amount, if any, that Barbara Schlein paid in excess to Anthony Griffin for legal services promised by Anthony Griffin.

[N/A]
Answer:      _____

b.   the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete the divorce matter.

[N/A]
Answer:      _____

c.   the amount of reasonable and necessary attorney's fee incurred as a result of Barbara Schlein having to hire new attorneys to complete the other matters started by Anthony Griffin.

[N/A]
Answer:      _____

d.   the difference between the sales price of Barbara Schlein's house located at 1628 Enterprise Avenue at foreclosure and the value of the house if repairs had been made because of the filing of an insurance claim.

[N/A]
Answer:      _____

e. mental anguish sustained from November 3, 2009 to date.

[N/A]

Answer: _____

## QUESTION 13

Did Anthony Griffin commit fraud against Barbara Schlein?

Fraud occurs when:

a. a party makes a materials misrepresentation, and
b. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and
c. the misrepresentation is made with the intention that it should be acted on by the other party, and
d. the other party relies on the misrepresentation and thereby suffers injury; or
e. a party fails to disclose a material fact within the knowledge of that party, and
f. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discovery the truth, and
g. the party intends to induce the other party to take some action by failure to disclose the fact, and
h. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

"Misrepresentation" means:
a. A false statement of fact; or
b. A promise of future performance made with an intent, at the time the promise was made, not to perform as promised; or
c. A statement of opinion based on a false statement of fact; or
d. A statement of opinion that the maker knows to be false.

Answer: No.

## QUESTION 14 & 15[20]

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Barbara Schlein for her damages, if any, that resulted from such fraud?

…

a. The amount, if any, that Barbara Schlein paid in excess to Anthony Griffin for legal services promised by Anthony Griffin.

[N/A]

Answer:           _____

b.  the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete the divorce matter.

[N/A]

Answer:           _____

c.  the amount of reasonable and necessary attorney's fee incurred as a result of Barbara Schlein having to hire new attorneys to complete the other matters started by Anthony Griffin.

[N/A]

Answer:           _____

d.  mental anguish sustained from November 3, 2009 to date.

[N/A]

Answer:           _____

## QUESTION NO. 16

Did you find by clear and convincing evidence that the harm to Barbara Schlein resulted from malice or fraud?

…

Answer:  [N/A]

## QUESTION NO. 17

Did Anthony Griffin engage in any false, misleading, or deceptive act or practice that Barbara Schlein relied on to her detriment and that was a producing cause of damages to Barbara Schlein?

…

Answer:  [No]

## QUESTION NO. 18

34

Did Anthony Griffin engage in any unconscionable action or course of action that was a producing cause of damages to Barbara Schlein?

> "Producing cause" means a cause that was a substantial factor in bringing about the damages, if any, and without which the damages would not have occurred. There may be more than one producing cause.

> An "unconscionable action" or "course of action" is an act or practice that, to a customer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.

Answer:  [Yes]

If you answer "Yes" to Question 17 or Question 18, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 19

Did Anthony Griffin engage in any such conduct knowingly or intentionally?

> …

Answer:  [Yes]

## QUESTION NO. 20

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Barbara Schlein for her damages, if any, that resulted from such conduct?

> …

> a.  The amount, if any, that Barbara Schlein paid in excess to Anthony Griffin for legal services promised by Anthony Griffin.
>
>     [0]
>     Answer:       _____

> b.  the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete the divorce matter.
>
>     [0]
>     Answer:       _____

35

c. the amount of reasonable and necessary attorney's fee incurred as a result of Barbara Schlein having to hire new attorneys to complete the other matters started by Anthony Griffin.

[0]
Answer:     _____

d. mental anguish sustained from November 3, 2009 to date.

[0]
Answer:     _____

## **QUESTION NO. 21**

What sum of money, if any, in addition to actual damages, should be awarded to Barbara Schlein against Anthony Griffin because Anthony Griffin's conduct was committed knowingly or intentionally?

…

Answer:  [$5,000.00]

If you answered "Yes" to Question 17, then answer the following question. Otherwise, do not answer the following question.

## **QUESTION NO. 22**

What is a reasonable fee for the necessary services of Barbara Schlein's attorney in this case, stated in dollars and cents?

…

a. For pre-trial preparation and representation in the trial court.

[N/A]
Answer:     _____.

b. For representation through the Court of Appeals.

[N/A]
Answer:     _____.

e. For representation [through] the petition for review stage in the Supreme Court of Texas.

36

(Questions 1 and 4). The final judgment finding entered by the trial court reflected the jury's answers. The jury also found that Appellant's breach caused damages in the amount of one hundred and five thousand seven hundred and fifty dollars ($105,750.00) (for the reasonable attorney's fee incurred in the representation of Barbara Schlein), twenty two thousand three hundred and ninety nine dollars and 29/00 cents ($22,399.29) (for the costs expended on Barbara Schlein's behalf), and reasonable attorneys' fees incurred due to such breach in the amount of sixty two thousand eight hundred and sixty six dollars for the work up to trial, fifteen thousand dollars ($15,000.00) if the case is appealed to the Court of Appeals; and twenty five thousand dollars ($25,000.00) if the case is appealed to the Supreme Court (representing the attorney's fee incurred in seeking to enforce the subject breach) (Questions 5-8).

---

[N/A]
Answer: _____.

    f. For representation in the merits briefing stage in the Supreme Court of Texas.
[N/A]
Answer: _____

    g. For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

[N/A]
Answer: _____

Cross-Appellant's Appendix, Tab 7. The Record on Appeal does not contain the Court's Charge. The cited referenced is derived from Appellee's Motion for Judgment. The document included in the appendix was taken off-line from the Galveston County District Clerk's Office. A request to supplement the record on appeal will be filed with the Clerk of the Court to forward the Court's Charge and all jury notes.

37

The jury found adversely against Appellant Schlein on a detrimental reliance submission (Question 9 & 10), breach of fiduciary responsibility (Question (11 & 12), fraud and malice (Questions 13, 14, 15, 16), deceptive trade (in any false, misleading, or deceptive act or practice that Barbara Schlein relied on to her detriment and that was a producing cause of damages to Barbara Schlein) (Question 17), and any predicated attorney fee questions (see Questions 8, 10, 12, 14, 15, 20 & 22).

The jury found in the favor of Appellant Schlein on Questions 18 (Did Anthony Griffin engage in any unconscionable action or course of action that was a producing cause of damages to Barbara Schlein?) and 19 (Did Anthony Griffin engage in any such conduct knowingly or intentionally?). In response to the damage questions on these questions, the jury found no actual damages suffered (Question 20), but found punitive damages in the amount of $5,000.00 (Question 21); all which is part of parcel of the issues brought by the Cross-Appellant to this Court.

It is in this factual context this matter is before this Honorable Court.

## SUMMARY OF ARGUMENT

There was a finding of unconscionable conduct (Question 18) against Cross-Appellant Griffin. With respect to the questions of damages for the unconscionable conduct, the answer was none (zero) (Question 20). There was a finding the unconscionable conduct was knowingly (Question 19), and with regards to the additional damage question there was a finding of $5,000.00, even though there was no actual damage finding. This finding cannot stand as a matter of law (*see Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) (reversing the additional damages award under DTPA, "To support an award of exemplary damages in this case, the plaintiff must prove a distinct tortious injury with actual damages. *Bellefonte Underwriters Insurance Co. v. Brown, supra; Luna v. North Star Dodge Sales, Inc., supra; City Products Corp. v. Berman, supra.* The only issue on actual damages inquired as to the cost of repairing the home to the condition it was represented to be in at the time of sale. Although the Reeds sought recovery for mental anguish in their petition, no issue was submitted on those damages.") In the case at bar, the question is cleaner – there was an adverse finding on the actual damages question.

Lawyers' work involve advice, judgment or legal opinions, and are not cognizable under the DTPA under Texas's common law rule against "fracturing" or are exempt from its application under Section 17.49(c) (*see Brennan v.*

*Manning*, No. 07-06-0041-CV, 2007 WL 1098476 (Tex. App.-Amarillo Apr. 12, 2007) (unpublished) (incorrect advice to plaintiff in a divorce proceeding that she was not entitled to any interest in funds owed to her husband exempt under the DTPA as the essence of the services provided was the provision of advice, judgment or opinion); *Rangel v. Lapin*, 177 S.W.3d 17 (Tex. App.-Houston [1st Dist.] 2005) (plaintiffs claim that attorney created confusion as to the source of services by representing that he was board certified when he was not, and by leading plaintiff to believe that a paralegal was an attorney, which plaintiff claimed caused him to weigh the firm's advice with undue favor, was barred by Section 17.49(c)); *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731 (Tex. App.-Fort Worth 2005) (a DTPA claim premised on representations by a home inspection company that a licensed real estate inspector would do the inspection, when an unlicensed apprentice was used, was a claim that the inspector was negligent in rendering an erroneous opinion based upon an apprentice's unsupervised inspection, and was therefore an inseparable part of the professional services and was barred by the DTPA); *Greathouse v. McConnell*, 982 S.W.2d 165 (Tex. App.-Houston [1st Dist.] 1998) (alleged false representation that legal services were of competent quality was a re-stated negligence claim not cognizable under the DTPA.

In the case at bar, nothing in the case represented any actions outside the exempted areas of advice, judgment and opinion. In addition, the Court's Jury

Charge gives no guidance as to the alleged action which allegedly was unconscionable ("Did Anthony Griffin engage in any unconscionable action or course of action that was a producing cause of damages to Barbara Schlein?").

**STANDARD OF REVIEW**

When a party attacks the legal sufficiency of an adverse finding on an issue it did not have the burden to prove at trial, it must demonstrate that there is no evidence to support the adverse finding (*Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.,* 48 S.W.3d 225, 236 (Tex.App.-San Antonio 2001, pet. denied)). In reviewing a no-evidence issue, this Court is required to consider all of the record evidence in a light most favorable to the verdict and indulge every reasonable inference from that evidence in support of the verdict. *Id.* This Court must determine whether the proffered evidence as a whole rises to a level that would "enable reasonable and fair-minded people to differ in their conclusion" (*Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994)).

A challenge to the legal sufficiency of the evidence must be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively

41

establishes the opposite of a vital fact (*Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997)).

When reviewing a challenge to the factual sufficiency of the evidence, this Court must consider all of the evidence in the record (*see Plas-Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989)). If a party is attacking the factual sufficiency of an adverse finding when the other party has the burden of proof that party must demonstrate there is insufficient evidence to support the adverse finding (*Aquila,* 48 S.W.3d at 236). In reviewing a factual insufficiency challenge, we weigh and examine all of the evidence that supports the verdict and that which is contrary to it. *Id.* We set aside the verdict only if the evidence is so weak the verdict is clearly wrong and manifestly unjust (s*ee Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *see also Jabri v Alsayyed*, 145 S.W.3d 664 (Tex. App. – Houston [14th Dist.] 2004)).

# ARGUMENT

POINT OF ERROR NO. 1:   THE FINDING OF NO ACTUAL DAMAGES ON THE UNCONSCIONABILITY QUESTION IS FATAL TO THE FINDING OF ADDITIONAL DAMAGES UNDER THE DECEPTIVE TRADE PRACTICES ACT.

The applicable Questions are noted below:

## QUESTION NO. 18

Did Anthony Griffin engage in any unconscionable action or course of action that was a producing cause of damages to Barbara Schlein?

> "Producing cause" means a cause that was a substantial factor in bringing about the damages, if any, and without which the damages would not have occurred. There may be more than one producing cause.

> An "unconscionable action" or "course of action" is an act or practice that, to a customer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.

Answer: [Yes]

If you answer "Yes" to Question 17 or Question 18, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 19

**Did Anthony Griffin engage in any such conduct knowingly or intentionally?**

> **…**

**Answer: [Yes]**

## QUESTION NO. 20

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Barbara Schlein for her damages, if any, that resulted from such conduct?

> …

> a. The amount, if any, that Barbara Schlein paid in excess to Anthony Griffin for legal services promised by Anthony Griffin.

43

[0]

Answer: _____

b. the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete the divorce matter.

[0]

Answer: _____

c. the amount of reasonable and necessary attorney's fee incurred as a result of Barbara Schlein having to hire new attorneys to complete the other matters started by Anthony Griffin.

[0]

Answer: _____

d. mental anguish sustained from November 3, 2009 to date.

[0]

Answer: _____


## QUESTION NO. 21

**What sum of money, if any, in addition to actual damages, should be awarded to Barbara Schlein against Anthony Griffin because Anthony Griffin's conduct was committed knowingly or intentionally?**

**…**

**Answer: [$5,000.00]**

If you answered "Yes" to Question 17, then answer the following question. Otherwise, do not answer the following question.

---

There was a finding of unconscionable conduct (Question 18). With respect to the questions of damages for the unconscionable conduct, the answer was none (zero) (Question 20). There was a finding the unconscionable conduct was

44

knowingly ( Question 19), and with regards to the additional damage question there was a finding of $5,000.00, even though there was no actual damage finding. This finding cannot stand as a matter of law (*see Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) (reversing the additional damages award under DTPA, "To support an award of exemplary damages in this case, the plaintiff must prove a distinct tortious injury with actual damages. *Bellefonte Underwriters Insurance Co. v. Brown, supra; Luna v. North Star Dodge Sales, Inc., supra; City Products Corp. v. Berman, supra.* The only issue on actual damages inquired as to the cost of repairing the home to the condition it was represented to be in at the time of sale. Although the Reeds sought recovery for mental anguish in their petition, no issue was submitted on those damages.") In the case at bar, the question is cleaner – there was an adverse finding on the actual damages question.

The judgment cannot stand as a matter of law. Evidence is legally insufficient when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or rules of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact (*City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex.2005); *see also James J. Flanagan Shipping Corporation v. Del Monte Fresh Produce, N.A., Inc.*, 403 S.W.3d 360, 367 (Tex. App. – Houston [1st Dist.]

45

2013); *Southwestern Bell Telephone Co. v. Delanney*, 809 S.W.2d 493 (Tex. 1991)).

POINT OF ERROR NO. 2:   THE TRIAL COURT ERRED IN NOT GRANTING JNOV ON THE DECEPTIVE TRADE PRACTICES QUESTIONS SUBMITTED TO THE JURY.

In Cross-Appellant's Motion for Judgment Notwithstanding the Verdict, the trial court was requested to enter a verdict adverse to the findings by the jury on Questions 19 and 21. Cross-Appellant submitted to the trial court and submits to this Court the questions were precluded as a matter of law. In addition, there is no evidence and/or insufficient evidence to support the verdict.[21]

The Deceptive Trade Practices Act exempts professional advice from its dictates. The relationship between Appellant and Cross-Appellant was an attorney-client relationship and as such judgment notwithstanding the verdict should be granted.[22]

---

[21]  *See* TEX. R. CIV. P. 301; *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991); *CDB Software, Inc.v. Krell*, 992 S.W.2d 31, 35 (Tex. App.-Houston [1st Dist.] 1998, pet. denied). A motion for jnov should be granted when the evidence is conclusive and one party is entitled to recover as a matter of law or when a legal principle precludes recovery. *Phar-Mor, Inc. v. Chavira*, 853 S.W.2d 710, 713 (Tex. App.-Houston [1st Dist.] 1993, writ denied) (*citing Mancorp, Inc. v. Culpepper*, 802 S.W. 2d 226, 227 (Tex. 1990)).

[22]  The relevant provisions of the Act are as follows:

    Sec. 17.49. EXEMPTIONS. (a) Nothing in this subchapter shall apply to the owner or employees of a regularly published newspaper, magazine, or telephone directory, or broadcast station, or billboard, wherein any advertisement in violation of this subchapter is published or disseminated, unless it is established that the owner or employees of the advertising medium have knowledge of the

46

false, deceptive, or misleading acts or practices declared to be unlawful by this subchapter, or had a direct or substantial financial interest in the sale or distribution of the unlawfully advertised good or service. Financial interest as used in this section relates to an expectation which would be the direct result of such advertisement.

(b) Nothing in this subchapter shall apply to acts or practices authorized under specific rules or regulations promulgated by the Federal Trade Commission under Section 5(a)(1) of the Federal Trade Commission Act [15 U.S.C.A. 45(a)(1)]. The provisions of this subchapter do apply to any act or practice prohibited or not specifically authorized by a rule or regulation of the Federal Trade Commission. An act or practice is not specifically authorized if no rule or regulation has been issued on the act or practice.

(c) **Nothing in this subchapter shall apply to a claim for damages based on the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill.** This exemption does not apply to:

(1) an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion;

(2) a failure to disclose information in violation of Section 17.46(b)(24);

**(3) an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion;**

(4) breach of an express warranty that cannot be characterized as advice, judgment, or opinion; or

(5) a violation of Section 17.46(b)(26).

(d) Subsection (c) applies to a cause of action brought against the person who provided the professional service and a cause of action brought against any entity that could be found to be vicariously liable for the person's conduct.

(e) Except as specifically provided by Subsections (b) and (h), Section 17.50, nothing in this subchapter shall apply to a cause of action for bodily injury or death or for the infliction of mental anguish.

**(f) Nothing in the subchapter shall apply to a claim arising out of a written contract if:**

**(1) the contract relates to a transaction, a project, or a set of transactions related to the same project involving total consideration by the consumer of more than $100,000;**

(2) in negotiating the contract the consumer is represented by legal counsel who is not directly or indirectly identified, suggested, or selected by the defendant or an agent of the defendant; and

(3) the contract does not involve the consumer's residence.

(g) Nothing in this subchapter shall apply to a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000, other

Section 17.49(c) of the Texas Deceptive Trade practices Act ("DTPA") states the statute is inapplicable to "a claim for damages based on the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill" (Tex. Bus. & Com. Code § 17.49(c)). A professional service is one that consists of acts particular to the individual's specialized vocation (*Nast v. State Farm Fire & Cas. Co*., 82 S.W.3d 114, 122 (Tex. App.—San Antonio 2002, no pet.)). An act is not a professional service if its only distinction is performance by a professional; rather, it must be an act that requires the professional to use his specialized knowledge or training. *Id*. This

than a cause of action involving a consumer of more than $500,000, other than a cause of action involving a consumer's residence.

(h) A person who violates Section 17.46(b)(26) is jointly and severally liable under that subdivision for actual damages, court costs, and attorney's fees. Subject to Chapter 41, Civil Practice and Remedies Code, exemplary damages may be awarded in the event of fraud or malice.

(i) Nothing in this subchapter shall apply to a claim against a person licensed as a broker or salesperson under Chapter 1101, Occupations Code, arising from an act or omission by the person while acting as a broker or salesperson. This exemption does not apply to:

(1) an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion;

(2) a failure to disclose information in violation of Section 17.46(b)(24); or

(3) an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion.

Added by Acts 1973, 63rd Leg., p. 322, ch. 143, Sec. 1, eff. May 21, 1973. Amended by Acts 1995, 74th Leg., ch. 414, Sec. 4, eff. Sept. 1, 1995; Acts 2001, 77th Leg., ch. 1229, Sec. 28, eff. June 1, 2002; Acts 2003, 78th Leg., ch. 1276, Sec. 4.001(b), eff. Sept. 1, 2003. Amended by: Acts 2011, 82nd Leg., R.S., Ch. 189 (S.B. 1353), Sec. 1, eff. May 28, 2011.

exemption from the DTPA does not apply to an express misrepresentation of material fact that cannot be characterized as advice, judgment, or opinion (Tex. Bus. & Com.Code § 17.49(c)(1)).

Lawyers' work involve advice, judgment or legal opinions, and are not cognizable under the DTPA under Texas's common law rule against "fracturing" or are exempt from its application under Section 1749(c) (*see Brennan v. Manning*, No. 07-06-0041-CV, 2007 WL 1098476 (Tex. App.-Amarillo Apr. 12, 2007) (unpublished) (incorrect advice to plaintiff in a divorce proceeding that she was not entitled to any interest in funds owed to her husband exempt under the DTPA as the essence of the services provided was the provision of advice, judgment or opinion); *Rangel v. Lapin*, 177 S.W.3d 17 (Tex. App.-Houston [1st Dist.] 2005) (plaintiffs claim that attorney created confusion as to the source of services by representing that he was board certified when he was not, and by leading plaintiff to believe that a paralegal was an attorney, which plaintiff claimed caused him to weigh the firm's advice with undue favor, was barred by Section 17.49(c)); *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731 (Tex. App.-Fort Worth 2005) (a DTPA claim premised on representations by a home inspection company that a licensed real estate inspector would do the inspection, when an unlicensed apprentice was used, was a claim that the inspector was negligent in rendering an erroneous opinion based upon an apprentice's unsupervised inspection, and was therefore an

49

inseparable part of the professional services and was barred by the DTPA); *Greathouse v. McConnell*, 982 S.W.2d 165 (Tex. App.-Houston [1st Dist.] 1998) (alleged false representation that legal services were of competent quality was a re-stated negligence claim not cognizable under the DTPA)).[23]

In the case at bar, nothing in the case represented any actions outside the exempted areas of advice, judgment and opinion. In addition, the Court's Jury Charge gives no guidance as to the alleged action which allegedly was unconscionable ("Did Anthony Griffin engage in any unconscionable action or course of action that was a producing cause of damages to Barbara Schlein?").[24] Cross-Appellant's evidence centered around four allegations: 1) failure to file in the insurance claim; 2) failure to continue on Defendant's case; 3) failure to return the Cross-Appellant's file and property; 4) failure to follow the terms of the alleged agreement that the fee was a flat fee of $35,000.00.

---

[23] See the case of *Mazuca and Asssociates v. Schumann*, 82 S.W.3d 90, 94 (Tex. App. – San Antonio (2002), wherein the Court explained:

TEX. BUS. & COM.CODE ANN. § 17.45(5) (Vernon 1987). The 1995 amendments to the DTPA allow an attorney to be held liable for an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion. Tex. Bus. & Com.Code Ann. § 17.49(c)(3). It further requires a showing that the resulting unfairness was "glaringly noticeable, flagrant, complete, and unmitigated...." *Chastain v. Koonce,* 700 S.W.2d 579, 584 (Tex.1985). In contrast, "[a] claim based upon the failure to exercise that degree of care, skill and diligence that a lawyer of ordinary skill and knowledge commonly possesses and exercises, despite its label, is a malpractice claim." *Kahlig v. Boyd,* 980 S.W.2d 685, 689 (Tex.App.-San Antonio 1998, pet. denied).

[24] The definition of unconscionable action or course of action in the charge was defined from the Act (*id.* at Section 17.45(5)).

Appellant Schlein's expert (Hardwick) testified to a breach of fiduciary responsibility and used the word "unconscionable" in describing alleged violations by Cross-Appellant. Hardwick also asserted in context of the breach of fiduciary responsibility, Cross-Appellant file the underlying lawsuit and asserting false allegations in the original petition. Hardwick stated she was hired by Appellant to figure out which of the attorney's fiduciary duties might have been violated by Cross-Appellant (RR., Vol. 10 at 122, lines 13-20). Hardwick expressed a view Cross-Appellant violated his duty of loyalty, candor, and confidentiality (*id.* at 123, lines 9-21). All related to a finding the jury found against Appellant (breach of fiduciary responsibility).

Hardwick's testimony is insufficient to get around the exemption engrafted in the law. With regards to the issue of false allegations in the original petition, this issue was resolved when the claim was dismissed at the close of Cross-Appellant's case (e.g., litigation exception under both the Disciplinary Rules (claim or defense), and litigation exception associated with legal pleadings/court proceedings. Hardwick also testified the contract itself was unconscionable and was not clear enough for the consumer. Hardwick's testimony is not sufficient in light of her self-imposed limitations of her testimony, that is, to testify only with regards to matters related to breach of fiduciary responsibility. It is worth repeating, "The 1995 amendments to the DTPA allow an attorney to be held liable

51

for an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion. Tex. Bus. & Com.Code Ann. § 17.49(c)(3). **It further requires a showing that the resulting unfairness was "glaringly noticeable, flagrant, complete, and unmitigated**...." *Chastain v. Koonce,* 700 S.W.2d 579, 584 (Tex.1985). In contrast, "[a] claim based upon the failure to exercise that degree of care, skill and diligence that a lawyer of ordinary skill and knowledge commonly possesses and exercises, despite its label, is a malpractice claim." *Kahlig v. Boyd,* 980 S.W.2d 685, 689 (Tex.App.-San Antonio 1998, pet. denied)" supra, *Mazuca and Asssociates v.Schumann*, 82 S.W.3d 90, 94 (Tex. App. – San Antonio (emphasis added).

In addition, any such recovery is barred by an additional exemption under § 17.49(f), which is in fact more explicit:

> Nothing in the subchapter shall apply to a claim arising out of a written contract if:
> (1) the contract relates to a transaction, a project, or a set of transactions related to the same project involving total consideration by the consumer of more than $100,000;
>
> (2) in negotiating the contract the consumer is represented by legal counsel who is not directly or indirectly identified, suggested, or selected by the defendant or an agent of the defendant; and
>
> (3) the contract does not involve the consumer's residence.

Where a contract does not state a face dollar amount, but nevertheless contemplates a transaction which will in the future involve consideration of more

than $100,000, Section 17.49(f) and (g) exemptions apply and bar relief. In *Texas Motor Coach, L.C. v. Blue Bird Body Co.*, No. 4:05CV34, 2005 WL 3132482 (E.D. Tex. Nov. 22, 2005), a motor coach dealer entered into a franchise dealership agreement with a manufacturer. The motor coach dealer constructed improvements on real property, obtained floor plan financing to operate the franchise, hired employees, and expended funds on advertising. Later, the manufacturer delivered three motor coaches, which were determined to be defective and were returned. The court dismissed the plaintiffs DTPA claims, finding that because the contract" assumed delivery" of three motor coaches, the cost of which were in excess of $200,000 each, the exemptions under Section 17.49(f) and (g) barred relief. Similarly, in *East Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813 (Tex. App.-Fort Worth 2007), the parties entered into a dealership agreement, with no minimum purchase requirement. The plaintiff, however, ultimately ordered boats from the defendant worth more than $859,000. The court ruled that the Section 17.49(g) exemption applied to bar the plaintiffs' claims. The plaintiff argued that at the time the dealer relationship was established, there was no promise to pay more than $500,000; rather, the plaintiff argued, there was merely an agreement under which it might never purchase anything. The fees and costs incurred by Anthony P. Griffin in this case exceeded $100,000.00 and as such the contract and services rendered are exempt under the statute. In addition, subsection (2) is met in light of

Appellant's testimony reflecting she visited Cross-Appellant's office on the advice of Marie Trefethern, a lawyer, who recommended she come because of the alleged $35,000.00 flat fee. There is no evidence the lawyer (Trefethern) was recommended, suggested or selected by Cross-Appellant.

The trial court erred in not granting the JNOV. The judgment should be set aside and rendered in Cross-Appellant's favor on no evidence and insufficient evidence grounds.

## PRAYER FOR RELIEF

Cross-Appellant prays in this his initial brief on appeal the judgment finding of unconscionable act be reversed and rendered, as well as the additional damage finding of $5,000.00

DATE: February 12, 2015.

Respectfully submitted,

*/s/ Norma Venso*
Norma Venso
State Bar No. 205456250
830 Apollo Lane
Houston, Texas 77058
(409) 789.8661
281.286.9990 (facsimile)
nvenso@earthlink.net

**ATTORNEYS FOR
CROSS-APPELLANT
ANTHONY P. GRIFFIN**

54

**CERTIFICATION OF COMPLIANCE**

I certify that the foregoing brief is in compliance with Texas Rule of Appellate Procedure 9.4 because it contains 13,993 words and has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font for text and 12-point Times New Roman font for footnotes meets the typeface requirements.

/s/ Norma Venso _____
NORMA VENSO

**CERTIFICATE OF SERVICE**

This is to certify that on this the 12th day of February, 2015, a true and correct copy of this brief was forwarded to opposing counsels by mailing the same by electronic filing of the same and/or by certified mail, return receipt requested, postage prepaid when noted, to-wit:

*/s/ Norma Venso*_____
Norma Venso

# APPENDIX

Appendix, Tab 1   [CR-000003-000009]   Index on Appeal

Appendix, Tab 2   [CR-000010-000021]   Plaintiff's Original Petition

Appendix, Tab 3   [CR-000026-000031]   Defendant's Amended Answer and Counterclaim

Appendix, Tab 4   [CR-000628-000632]   Plaintiff's Second Amended Petition

Appendix, Tab 5   [CR-429]   Order Denying Plaintiff's Partial Motion for Summary Judgment

Appendix, Tab 6   [CR-760]   Order denying Defendant's Motion for Summary Judgment

Appendix, Tab 7   [SUPP CR]   Court's Charge

Appendix, Tab 8   [RR, VOL. 13]   Jury Verdict

Appendix, Tab 9   [CR-001208]   Order Denying Plaintiff's Motion Notwithstanding Verdict

Appendix, Tab 10  [CR-01249-01250]   Final Judgment

Appendix, Tab 11  [CR-001245]   Order Denying Defendant's Motion for New Trial

Appendix, Tab 12  [CR-001247-001248]   Defendant's Notice of Appeal

Appendix, Tab 13  [CR-001251-1253]   Plaintiff's Cross-Appeal

Appendix, Tab 14  [RR, VOL. 14, pp. 5-15] Contract of Employment and cover letter

**APPENDIX, TAB 1 – INDEX ON APPEAL**

000003

**CAUSE NO. CV-0069481**

| Anthony P Griffin | § | IN THE COUNTY COURT |
|---|---|---|
| | § | |
| | § | |
| | § | |
| **vs.** | § | AT LAW NUMBER TWO (2) |
| | § | |
| | § | |
| | § | |
| Barbara Regina Schlein | § | GALVESTON COUNTY, TEXAS |

## INDEX

| Document: | File Date: | Volume: | Page: |
|---|---|---|---|
| Original Petition | 03/14/13 | 1 | 1 - 12 |
| Administrative Order of Assignment by Presiding Judge (admn) | 05/23/13 | 1 | 13 - 13 |
| Certificate(s) | 06/14/13 | 1 | 14 - 16 |
| Amended Answer and Counter Claim | 06/18/13 | 1 | 17 - 50 |
| Demand For Jury Trial | 06/20/13 | 1 | 51 - 51 |
| Certificate(s) | 06/21/13 | 1 | 52 - 53 |
| Response To Motion | 07/19/13 | 1 | 54 - 75 |
| Docket Control Order | 08/15/13 | 1 | 76 - 77 |
| Motion For Continuance | 09/18/13 | 1 | 78 - 85 |

Cross-Appellant's Appendix2

000003

| | | | |
|---|---|---|---|
| Motion To Quash | 09/20/13 | 1 | 86 - 96 |
| Special Exceptions | 09/23/13 | 1 | 97 - 104 |
| Order For Continuance | 09/23/13 | 1 | 105 - 105 |
| Docket Control Order | 09/23/13 | 1 | 106 - 107 |
| Motion | 09/24/13 | 1 | 108 - 186 |
| Order Setting Hearing | 09/25/13 | 1 | 187 - 187 |
| Special Exceptions | 09/26/13 | 1 | 188 - 195 |
| Fiat | 09/27/13 | 1 | 196 - 196 |
| Response | 09/30/13 | 1 | 197 - 200 |
| Response | 09/30/13 | 1 | 201 - 213 |
| Response | 09/30/13 | 1 | 214 - 217 |
| Response | 09/30/13 | 1 | 218 - 222 |
| Motion for Partial Summary Judgment | 09/30/13 | 1 | 223 - 286 |
| Amended Petition | 10/04/13 | 1 | 287 - 292 |

Cross-Appellant's Appendix3

| | | | |
|---|---|---|---|
| Order | 10/07/13 | 1 | 293 - 293 |
| Order Denying Motion | 10/07/13 | 1 | 294 - 294 |
| Order To Compel | 10/07/13 | 1 | 295 - 295 |
| Fiat | 10/07/13 | 1 | 296 - 296 |
| Notice(s) | 10/14/13 | 1 | 297 - 298 |
| Order On Motion To Quash | 10/15/13 | 1 | 299 - 300 |
| Response | 11/07/13 | 1 | 301 - 317 |
| Amended Counterclaim | 11/07/13 | 1 | 318 - 350 |
| Original Answer | 11/07/13 | 1 | 351 - 353 |
| Amended Affidavit | 11/15/13 | 1 | 354 - 357 |
| Response To Motion For Partial Summary Judgment | 12/02/13 | 1 | 358 - 419 |
| Order Denying Motion | 12/27/13 | 1 | 420 - 420 |
| Motion | 01/06/14 | 1 | 421 - 454 |
| Order For Hearing | 01/14/14 | 1 | 455 - 455 |

Cross-Appellant's Appendix4

000006

| | | | |
|---|---|---|---|
| Motion To Quash | 01/30/14 | 1 | 456 - 463 |
| Motion To Quash | 01/31/14 | 1 | 464 - 471 |
| Motion For Summary Judgment | 01/31/14 | 2 | 472 - 558 |
| Motion To Strike | 01/31/14 | 2 | 559 - 576 |
| Motion To Compel | 01/31/14 | 2 | 577 - 601 |
| Motion To Compel | 01/31/14 | 2 | 602 - 607 |
| Notice Of Submission | 02/05/14 | 2 | 608 - 609 |
| Notice Of Submission | 02/06/14 | 2 | 610 - 611 |
| Response | 02/06/14 | 2 | 612 - 614 |
| Rule 11 - Letter | 02/12/14 | 2 | 615 - 616 |
| Certificate(s) | 02/18/14 | 2 | 617 - 618 |
| Amended Petition | 02/24/14 | 2 | 619 - 623 |
| Response To Motion For Summary Judgment | 02/24/14 | 2 | 624 - 632 |
| Motion For Leave | 02/24/14 | 2 | 633 - 643 |

000006

| | | | |
|---|---|---|---|
| Affidavit In Support Of Attorney's Fees | 02/25/14 | 2 | 644 - 689 |
| Reply To Response | 02/27/14 | 2 | 690 - 717 |
| Response To Motion | 02/27/14 | 2 | 718 - 742 |
| Order Allowing Extension Of Time | 02/27/14 | 2 | 743 - 743 |
| Reply To Response | 02/28/14 | 2 | 744 - 750 |
| Order Denying Motion | 02/28/14 | 2 | 751 - 751 |
| Motion For Continuance | 03/10/14 | 2 | 752 - 754 |
| Amended Counterclaim | 04/04/14 | 2 | 755 - 796 |
| Motion To Reconsider Hearing/Ruling | 04/07/14 | 2 | 797 - 823 |
| Response To Motion | 04/11/14 | 2 | 824 - 876 |
| Motion For Continuance | 04/16/14 | 2 | 877 - 881 |
| Motion In Limine | 05/06/14 | 2 | 882 - 890 |
| Witness List | 05/06/14 | 2 | 891 - 894 |
| List Of Exhibits | 05/06/14 | 2 | 895 - 902 |

Cross-Appellant's Appendix6

| | | | |
|---|---|---|---|
| Business Records Affidavit | 05/07/14 | 2 | 903 - 961 |
| List Of Exhibits | 05/07/14 | 2 | 962 - 969 |
| Order On Motion In Limine | 05/07/14 | 2 | 970 - 979 |
| Order | 05/07/14 | 3 | 980 - 981 |
| Order Granting Motion | 05/07/14 | 3 | 982 - 982 |
| Amended Motion | 05/09/14 | 3 | 983 - 995 |
| Order Granting Motion | 05/09/14 | 3 | 996 - 996 |
| Motion | 05/14/14 | 3 | 997 - 1005 |
| Brief | 05/19/14 | 3 | 1006 - 1071 |
| Supplement | 05/19/14 | 3 | 1072 - 1133 |
| Order | 05/21/14 | 3 | 1134 - 1134 |
| Motion For Entry Of Judgment | 06/12/14 | 3 | 1135 - 1155 |
| Response To Motion | 06/12/14 | 3 | 1156 - 1165 |
| Amended Motion | 06/13/14 | 3 | 1166 - 1186 |

Cross-Appellant's Appendix7

| | | | |
|---|---|---|---|
| Amended Response | 06/18/14 | 3 | 1187 - 1198 |
| Order Denying Motion | 06/30/14 | 3 | 1199 - 1199 |
| Motion For New Trial | 07/30/14 | 3 | 1200 - 1215 |
| Response To Motion For New Trial | 08/19/14 | 3 | 1216 - 1227 |
| Motion To Compel | 09/11/14 | 3 | 1228 - 1235 |
| Order Denying Motion For New Trial | 09/11/14 | 3 | 1236 - 1236 |
| Order To Compel | 09/12/14 | 3 | 1237 - 1237 |
| Notice Of Appeal | 09/26/14 | 3 | 1238 - 1241 |
| Notice Of Appeal | 10/10/14 | 3 | 1242 - 1244 |
| Motion | 10/14/14 | 3 | 1245 - 1250 |
| Notice Of Submission | 10/17/14 | 3 | 1251 - 1252 |
| Motion | 11/05/14 | 3 | 1253 - 1257 |
| Response In Opposition To Motion | 11/13/14 | 3 | 1258 - 1261 |

Cross-Appellant's Appendix8



**APPENDIX, TAB 2 – PLAINTIFF'S ORIGINAL PETITION**

000010

Filed
13 March 14 P6:43
Dwight D. Sullivan
County Clerk
Galveston County

CAUSE NO. CV-69481

ANTHONY P. GRIFFIN                   IN THE COUNTY COURT

V.                                   AT LAW NO.  2

BARBARA REGINA SCHLEIN          GALVESTON COUNTY, TEXAS

<u>PLAINTIFF'S, ANTHONY P. GRIFFIN, ORIGINAL PETITION</u>

TO THE HONORABLE JUDGE OF SAID COURT:

This lawsuit is brought to collect on outstanding debts due and owing to Anthony P. Griffin, hereinafter and sometimes referred to as Plaintiff, with regards to services rendered to Barbara Regina Schlein, hereinafter and sometimes referred to as Defendant.  Plaintiff would show unto the Court as follows, to-wit:

I.

This is a Schedule 2 matter and as such it is requested that the Court establish a scheduling order herein.

II.

At all times material to this action, Plaintiff is a licensed lawyer in the State of Texas engaged in the practice of law.

Defendant, Barbara Schlein, can be served with process by serving her at 2106 Pleasant Palm Circle, League City, Texas 77573.

Cross-Appellant's Appendix10                    000010

All matters material to this action occurred in Galveston and/or Harris County, Texas.

III.

<u>Breach of Contract Claim - Family Claim</u>

In November 3, 2009, Plaintiff entered a contract of employment with Plaintiff.  The contract called for the Defendant to pay to Plaintiff an initial retainer of $35,000.00 and for counsel to be paid a reduced hourly rate of $250.00 an hour for any work over $35,000.00.  The contract was entered with knowledge of previous counsel's representation of the Defendant and the long-term and protracted nature of the underlying family/business law litigation.[1]  Even though referenced in the contract, the Defendant never paid the initial retainer of $35,000.00, but explained to Plaintiff that she was trustworthy, that she always paid her bills and that if the Plaintiff took care of her interest, she would take care of him. Plaintiff explained that she simply had to abide with the terms of the contract.

Plaintiff represented Defendant in the family litigation and maintained business records during the course of the representation.  At the end of the representation, Plaintiff

---

[1] In the Matter of the Marriage of Barbara Regina Schlein and Robert John Schlein; Case No. 08FD2371; in the County Court at Law, No. 2, Galveston, County, Texas.

2

forwarded a bill setting out the total amount of time expended on Plaintiff's behalf was 352.50 hours for a total of $88,125.00. Plaintiff's office also incurred some $22,339.29 in costs. The total attorneys' fee and costs incurred on behalf of the client and due and owing is $110,524.29.

Plaintiff sues for this amount and prays for judgment.

IV.

Additional Work – Quantum Meruit

Plaintiff also engaged in other work for Defendant that was external to the contract of employment surrounding the family litigation. The agreement of representation was based upon trust and promises that Defendant was "honest, trustworthy and a Christian woman and that she paid her bills" (Defendant's words). Plaintiff was informed by Defendant on multiple occasions that if her money in the family case was cleared up she would immediately get Plaintiff paid – "trust me." The worked performed on Defendant's behalf included the following:

i)   Civil litigation over debt in Justice Court (Bank of America v. Barbara and Robert Schlein) – the defense was successful;

ii)  Criminal litigation in criminal case (State of Texas v. Barbara Schlein, in the County Criminal Court, Harris County, Texas) & ultimately work on an

3

000013

expunction and filing an expunction in Harris County, Texas with respect to same – the defense was successful, the expunction matter is pending at this submission;

iii) Ticket work/criminal litigation in Manvel, Texas – (State of Texas v. Barbara Schlein) – the defense was successful;

iv) Representation of Defendant's son (State of Texas v. Austin Reed) – the defense was successful;

v) Representation of Barbara Schlein in tax litigation matter pending in Galveston County, Texas (pending) (County of Galveston v. Barbara Schlein and Robert Schlein);

vi) Representation of Barbara Schlein in contingent fee litigation with regards to builder's negligence (Barbara Schlein v. Centre Builders, et al.; in the 10th Judicial District Court; Galveston County, Texas);

vii) Representation of Barbara Schlein in litigation in real estate litigation and lien placed on community property (Barbara Schlein v. Robert Schlein and Bill De La Garza, et al., in the 212th Judicial District Court; Galveston County, Texas).

The reasonable value of the subject work is sixty

4

000013

thousand ($60,000.00) dollars; this amount does not include the contingent fee in existence in the building negligence matter pending in Galveston County. Plaintiff sues for his reasonable and necessary attorney's fees and costs incurred on behalf of Plaintiff in these cases ($15,000.00 in costs). Plaintiff seeks a declaratory judgment with respect to the contingent fee contract on the construction litigation that the contract is a valid and enforceable contract and remains in effects.

V.

## Unjust Enrichment

Plaintiff incorporates by reference the above information for all purposes. In addition and/or in the alternative to the foregoing, Plaintiff would show that it is entitled to recover under the doctrine of unjust enrichment. According to this equitable principle of justice, equity, and/or good conscience, Plaintiff is entitled to recover for the products, materials, and services that Defendant received and benefited from without compensating Plaintiff. Under the theory of unjust enrichment, Plaintiff is entitled to recover all actual damages, together with attorneys' fees and costs of Court.

5

## VI.

### Fraud Allegations

Plaintiff brings suit on the basis of fraud. It is Plaintiff's contention that Defendant has defrauded both him and the court during the course of the contractual relationship. Plaintiff signed a contract imposing an obligation on the client to be honest in her dealings with the Plaintiff and the court. The applicable language under the contract reads as follows:

### Withdrawal, Malfeasance, Breach of Contract

1.  Withdrawal: Lawyers have an ethical obligation to represent the Client zealously within the bounds of the law, but the Lawyers also have an obligation, when material representation surfaces or where there is a breach of the terms of this contract by the Client, to withdraw from the representation of the Client. Nothing in this contract guarantees any results, including whether a suit will or will not be filed or any other matters that border on guarantees. The only guarantee relates to the representation within the confines of the Code of Professional Responsibility (zealously within the bounds of the law). It has been explained orally that the Lawyers' obligation to the Court and the rules of ethics require investigation and examination of the facts.

2.  Investigation/If No Case: If the facts reveal no case exists, the Lawyer shall promptly advise the client and terminate the relationship. The retainer again is non-refundable.

6

000016

3. <u>Investigation/Material Breach</u>:  If the investigation reveals a material breach, lie, or misstatement by the client, the Lawyer will advise the Client as to how such breach affects the Lawyer's ability to proceed in the representation. If termination is appropriate, the Lawyer(s) shall advise the client of her rights and shall promptly take any necessary acts to protect the Client (advise as to action) and the firm's rights. Again, the retainer shall be deemed non-refundable.

Prior to the signing of the contract, the contract was explained to the client and Plaintiff relied upon Defendant's statements with regard to telling the truth, be forthright and honest and not to conceal any information during the process.  Defendant affirmed her understanding and held out that she would remain honest and that she would not conceal information from Plaintiff and/or from the Court.  However, during the course of the relationship, Defendants actions revealed fraud that struck at the fundamental relationship between the parties.  These actions included the following:

1) Requesting to see banking records before the lawyer after banking records were tendered by the banking entity.  After the lawyer learned that the client had gone through the records prior to his review, copying and tendering to the other side, he prohibited

7

000016

the client's access to any such documents until after the lawyer touched the documents first;

2) In preparation for trial, the lawyer discovered a discrepancy in checks and the financial records and inquired of the client. In the discussion, the lawyer became angry and stated that "if I was the judge, I would put you in jail." The Defendant, instead of addressing the problem/discrepancy the client engaged in tears and continued to repeat …. "I don't know." When the contradiction was revealed in the examination, the client simply stated, "I just have to go to jail." The client was instructed that if the question was asked at a trial or hearing, Defendant had to answer honestly, even if it meant not answering and/or repeating her statement, "I just have to go to jail." The question was not asked at trial;

3) The client held out to Plaintiff that his fees would be paid. "I have the money, I will pay you. You trust me don't you?"

8

000018

Defendant explained that when the process was over she would immediately get a check issued to pay Plaintiff. Plaintiff relied on these statements.

4) After the presentation of the bill, Plaintiff explained in the bill and orally that he would discount the bill (fees and costs), in order to make it better on the client and in order to receive compensation. On or about October 28, 2011, Plaintiff was informed by Defendant that she would not and could not pay Plaintiff's fees. Plaintiff had been informed that she had worked with her financial advisor, Ritchie Faulk to protect her funds from collection. In the conversation of October 28, 2011, Defendant said the funds were placed in an IRA and that she could not remove the same until she was 59. Presumably, Defendant wanted Plaintiff to wait until a period of in excess of ten (10) years for compensation. The Defendant's statement was related to the IRA is inconsistent with Defendant holding out that after taking out "your" lawyer's

9

000018

000019

fees, I will place my other funds in a protective status. Plaintiff relied on the Defendant's statements.

Plaintiff has been defrauded by Defendant and seeks a judgment finding that "fraud" has taken place.

VII.

Theft of Services – Theft Liability Act

Plaintiff incorporates by reference the above factual paragraphs setting out the factual history. Defendant misappropriated monies owed to Plaintiff with the intent to deprive Plaintiff of that property and/or without Plaintiff's consent. Defendant has engaged in theft of services under the Theft Liability Act by intentionally and knowingly securing the performance of services by deception, false token, and/or by securing the performance of those services by agreeing to provide compensation to Plaintiff and, after the services were rendered, by failing to make payment after receiving notice demanding payment. To the extent necessary or appropriate, Plaintiff incorporates the following provisions of the Texas Penal Code: §§ 31.01(1), 31.01(3), 31.01(4), 31.01(5), and 31.01(6).

10
Cross-Appellant's Appendix19

000019

000020

Defendant has unlawfully diverted and/or held monies owed to Plaintiff for services rendered and, pursuant to the Theft Liability Act.

## VIII.

### Prayer for Relief

Plaintiff prays for the following relief in this matter:

1.    Actual damages incurred by Plaintiff associated with all claims asserted herein;

2.    A declaratory judgment that Defendant has engaged in fraud;

3.    A judicial finding that Plaintiff is entitled to quantum meruit and/or a finding of unjust enrichments on the portions of the work that no contract existed;

4.    A finding that Defendant has engaged in theft of services in violation of Texas law;

5.    Plaintiff seeks exemplary damages for Defendant's conduct;

6.    Plaintiff seeks pre-judgment interest, post judgment interest, court costs, and reasonable and necessary attorney's fees (fees associated when counsel is hired to represent the Plaintiff's interest) that Plaintiff is entitled to recover.

000020

000021

7.    Plaintiff seeks the recovery of all damages under law and equity that Plaintiff is entitled to recover.

DATE:  March 14, 2013.

Respectfully submitted,

/S/ NORMA VENSO

_____

NORMA VENSO
ATTORNEY AT LAW
830 APOLLO
HOUSTON, TEXAS 77058
409.789.8661
FACSIMILE NO. 281.286.9990

STATE BAR NO. 20545250

c:word.griffin_anthony_[schlein_barbara]_original_petition

Cross-Appellant's Appendix21
000021

**APPENDIX, TAB 3- DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIM**

Cross-Appellant's Appendix22

CAUSE NO. CV-0069481

Filed
13 June 18 P3:29
Dwight D. Sullivan
County Clerk
Galveston County

| ANTHONY GRIFFIN | § | IN THE COUNTY COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | AT LAW NO. 2 |
| | § | |
| BARBARA REGINA SCHLEIN | § | |
| *Defendant.* | § | GALVESTON COUNTY, TEXAS |

## DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Barbara Regina Schlein ("Defendant") files this Amended Answer to the Original Petition filed by Plaintiff Anthony Griffin ("Plaintiff") and Counterclaims as follows:

### AMENDED ANSWER

#### *General Denial*

1.1     Pursuant to Tex. R. Civ. P. 92, Defendant generally denies all allegations made against her and on trial hereof demand strict proof of Plaintiff's allegations by a fair preponderance of the evidence, as required by law and the Constitution of the State of Texas.

#### *Affirmative Defenses*

1.2     Defendant is not liable or in breach of contract due to accord and satisfaction, as Plaintiff agreed to and acknowledged receipt of items of tangible value in exchange for extinguishment of debt owed under one or more of the alleged contracts between Plaintiff and Defendant.

1.3     Defendant is not liable or in breach of contract as one or more of Plaintiff's claims regarding an alleged contract between Plaintiff and Defendant are barred for failure of consideration.

1.4     Defendant is not liable as Plaintiff cannot recover under quantum meruit since Plaintiff has unclean hands.

---

**DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIM**                    PAGE 1 OF 6

Cross-Appellant's Appendix23

000027

1.5    Defendant asserts that the conduct and/or damages alleged by Plaintiff are the result of acts or omissions committed by Plaintiff. Defendant therefore invokes the procedures and protections set forth in Texas Civil Practice and Remedies Code §33.001, et seq.

1.6    Defendant is or may be entitled to certain credits and/or off-sets pursuant to the common law of the State of Texas and/or Chapter 32 and/or Chapter 33 of the Texas Civil Practice & Remedies Code.

1.7    Defendant is entitled to contribution and/or indemnity from any Plaintiff, Defendant, or third party Defendant now or hereinafter named in this lawsuit, pursuant to contract and/or as provided under the common law of the State of Texas and/or pursuant to Chapters 33 and/or Chapter 41 of the Texas Civil Practice & Remedies Code.

## ORIGINAL COUNTERCLAIM

### FACTUAL BACKGROUND

2.1    On November 3, 2009, Schlein and Griffin, representing the Griffin Law Firm, signed a Contractual Agreement to retain Griffin's legal services to represent Schlein in her divorce proceedings. *See* Contractual Agreement (hereinafter "Contractual Agreement," attached as Exhibit A). The Contractual Agreement provides for a $35,000 retainer fee to be paid by Schlein, subject to an understanding that there was a court order which prevented Schlein from expending funds without approval of the court. Ex. A. The Contractual Agreement further provides that the retainer is "non-refundable" and that "once the fee is paid, it shall be deemed earned." Ex. A.

2.2    Griffin supplemented the Contractual Agreement by providing Schlein with an Explanation of Contract and Letter Agreement (hereinafter "Letter Agreement," attached as Exhibit B. The Letter Agreement provides that the "contract relates to the family matter but contemplates adding claims and/or amending the pleadings" in a separate pending action. *Id.* The Letter

Cross-Appellant's Appendix24

Agreement further states that "the retainer is set at an amount that it is anticipated that no additional fees will be charged." *Id.*

2.3     The Letter Agreement also contemplates possible separate lawsuits and states that a separate contract will be drawn for those cases and that a contingent fee arrangement is contemplated. Ex. B.

2.4     On October 24, 2011, a Final Decree of Divorce was entered for Schlein. *See* Final Decree of Divorce (attached as Exhibit C). In this Final Decree, the court awarded to Schlein several pallets of Travertine marble as her sole and separate property. *Id.* at 3. Furthermore, the court specifically stated that this Travertine marble belonging to Schlein was in Griffin's possession. *Id.*

2.5     Professional appraisal of this Travertine marble has been valued at $56,338.85. *See* Product Appraisal (attached as Exhibit D).

2.6   Following this resolution of her divorce proceedings, Griffin accepted this Travertine marble as payment for legal services rendered.

## BREACH OF CONTRACT

3.1     All proceeding paragraphs are hereby incorporated by reference. There was a valid, enforceable contract-specifically the Contractual Agreement and Letter Agreement-between the parties to this suit. Schlein fully performed her duties under the Contractual Agreement and Letter Agreement. Griffin failed to perform his duties and breached the Contractual Agreement and Letter Agreement. Griffin's breach proximately caused Schlein's injury. As a result, Schlein seeks to recover actual damages, benefit of the bargain damages, and reliance damages.

## LEGAL MALPRACTICE

4.1     All proceeding paragraphs are hereby incorporated by reference. As her attorney, Griffin owed a duty of care to Schlein. Griffin's negligent acts and/or omissions breached that duty.

000029

As a result of Griffin's breach, Schlein was injured and suffered damages. As a result, Schlein seeks to recover actual damages, benefit of the bargain damages, and reliance damages.

## BREACH OF FIDUCIARY DUTY

5.1     All proceeding paragraphs are hereby incorporated by reference. As a result of the attorney-client relationship, Griffin owed a fiduciary duty to Schlein. Griffin breached his fiduciary duty by failing to do one or more of the following actions: (1) preserve client confidences; (2) represent the client with undivided loyalty; (3) act with absolute perfect candor, openness and honesty without any concealment or deception; (4) to be strictly honest about the fee arrangement and refrain from self dealing; (5) inform client of matters material to the representation; (6) to turn over funds belonging to the client; and (7) to follow the client's instructions. As a result of Griffin's breach, Schlein was injured and suffered damages. Furthermore, Griffin also benefitted financially from the breach. As a result, Schlein seeks to recover actual damages, benefit of the bargain damages, and reliance damages.

## FRAUD

6.1     All proceeding paragraphs are hereby incorporated by reference. Griffin made a material representation to Schlein in the Contractual Agreement and Letter Agreement that any Griffin's representation of Schlein in any additional matters would be on a contingency fee basis and covered by a separate agreement. Griffin knew this representation was false at the time it was made. Griffin made this representation to Schlein with the intent that she rely on the representation and enter into the Contractual and Letter Agreements. Schlein relied on these representations and entered into the Contractual and Letter Agreements with Griffin, and as a result she was injured. As a result, Schlein seeks to recover actual damages, benefit of the bargain damages, attorney's fees and reliance damages.

000030

## FRAUD FOR FAILURE TO DISCLOSE

7.1    All proceeding paragraphs are hereby incorporated by reference.  Griffin concealed material facts relating to the his representation of Schlein from her.  Due to the fiduciary relationship between the parties, Griffin had a duty to disclose these facts to Schlein.  The omitted facts were material to the decisions that were made by Schlein.  Griffin knew that Schlein was ignorant of the facts and that she did not have an opportunity to discover the facts.  Griffin was deliberately silent regarding the material facts and intended to induce Schlein to sign the Contractual Agreement by omitting these facts.  Schlein relied on Griffin's non-disclosure when consenting to the Contractual and Letter Agreements and as a result was injured.  Schlein seeks to recover attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code Ch. 38.

## DEMAND FOR JURY TRIAL

8.1    Defendant hereby demands a trial by jury and tenders the appropriate fee.

## RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests the Court to dismiss this suit or render judgment that Plaintiff take nothing by reason of this suit.  Furthermore, upon trial of this case, Counter-Plaintiff Schlein respectfully asks to be awarded:

    a.    Actual damages;

    b.    Exemplary damages;

    c.    Pre-judgment and post-judgment interest;

    d.    Costs of suit;

    e.    Attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code Ch. 38;  and

    f.    Such other and further relief to which Schlein may be justly entitled.

000031

Respectfully submitted,

CHRISTIAN SMITH & JEWELL, LLP


By: ___/s/ *Stephen H. Cagle, Jr.*___
       Stephen H. Cagle, Jr.
       State Bar No. 24045596
       Heather C. Panick
       State Bar No. 24062935
       2302 Fannin, Suite 500
       Houston, Texas 77002
       (713) 659-7617 (Phone)
       (713) 659-7641 (Fax)

**ATTORNEYS FOR DEFENDANT**


## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of June, 2013, a true and correct copy of the above and foregoing document has been duly served upon all attorneys of record via hand delivery and/or facsimile and/or regular mail and/or certified mail, return receipt requested.

Norma Venso
Attorney at Law
830 Apollo
Houston, Texas 77058
Phone: (409) 789-8661
Fax: 281-286-9990


          ___/s/ *Stephen H. Cagle, Jr.*___
          Stephen H. Cagle, Jr.

**APPENDIX, TAB 4- PLAINTIFF'S SECOND AMENDED PETITION**

000628

CAUSE NO. CV-0069481

| ANTHONY P. GRIFFIN, INDIVIDUALLY D/B/A A GRIFFIN LAWYERS | IN THE COUNTY COURT |
|---|---|
| V. | AT LAW NO. 2 |
| BARBARA REGINA SCHLEIN | GALVESTON COUNTY, TEXAS |

PLAINTIFF(S)'S, ANTHONY P. GRIFFIN AND
A GRIFFIN LAWYERS, SECOND AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

This lawsuit is brought to collect on outstanding debts due and owing to Anthony P. Griffin, as owner of the assumed name of A Griffin Lawyers (an assumed name for Anthony P. Griffin), and sole owner of a former corporate legal entity known as Anthony P. Griffin, Inc. (defunct corporation, not good standing), hereinafter and sometimes referred to as Plaintiff(s)), with regards to services rendered to Barbara Regina Schlein, hereinafter and sometimes referred to as Defendant. Plaintiff(s) would show unto the Court as follows, to-wit:

I.

This is a Schedule 2 matter and as such it is requested that the Court establish a scheduling order herein.

1

000628

000629

## II.

At all times material to this action, Plaintiff is a licensed lawyer in the State of Texas engaged in the practice of law. Plaintiff is also the sole owner of the debts and assets of the defunct professional corporation known as Anthony P. Griffin, Inc., and did business as A Griffin Lawyers. Anthony P. Griffin is also the sole owner of the debts and assets of the assume name of A Griffin Lawyers.

Defendant, Barbara Schlein, has been served and has answered in this matter.

All matters material to this action occurred in Galveston County, Texas.

## III.

### Breach of Contract Claim – Family Claim

In November 3, 2009, Plaintiff(s) entered a contract of employment with Defendant. The contract called for the Defendant to pay to Plaintiff(s) an initial retainer of $35,000.00 and for Plaintiff(s) to be paid a reduced hourly rate for any work over $35,000.00. The contract was entered with knowledge of the long-term and protracted nature of the underlying

2

Cross-Appellant's Appendix31

000629

000630

family/business law litigation.[1] Defendant never paid the initial retainer of $35,000.00, but explained to Plaintiff(s) that she was trustworthy, that she always paid her bills and that if the Plaintiff(s) took care of her interest, she would take care of him.

Plaintiff(s) represented Defendant in the family litigation and maintained business records during the course of the representation. At the end of the representation, Plaintiff(s) forwarded a bill setting out the total amount of time expended on Plaintiff(s)'s behalf was 352.50 hours x $300.00 an hour for a total of $105,750.00. Plaintiff(s)'s office also incurred some $22,339.29 in costs. The total attorneys' fee and costs incurred on behalf of the client and due and owing is $128,089.29.

Plaintiff(s) sues for this amount and prays for judgment.

III.

Prayer for Relief

Plaintiff(s) prays for the following relief in this matter:

1.    Actual damages incurred by Plaintiff(s) associated with all claims asserted herein ($110,524.29);

---

[1] In the Matter of the Marriage of Barbara Regina Schlein and Robert John Schlein; Case No. 08FD2371; in the County Court at Law, No. 2, Galveston, County, Texas.

Cross-Appellant's Appendix32
000630

000631

2.    Plaintiff(s) seeks pre-judgment interest, post judgment interest, court costs, and reasonable and necessary attorney's fees for the breach of contract that Plaintiff(s) is entitled to recover.

3.    Plaintiff(s) seeks the recovery of all damages under law and equity that Plaintiff(s) is entitled to recover.

DATE:  February 24, 2014.

Respectfully submitted,

/S/ NORMA VENSO

NORMA VENSO
ATTORNEY AT LAW
830 APOLLO
HOUSTON, TEXAS 77058
409.789.8661
FACSIMILE NO. 281.286.9990

STATE BAR NO. 20545250

4

Cross-Appellant's Appendix33

000631

000632

## CERTIFICATE OF SERVICE

This is to certify that on this the 24th day of February, 2014, a true and correct copy of the foregoing Plaintiff(s)'s Second Amended Petition was forwarded to opposing counsel, by facsimile transmission and by regular mail (confirmation copy), to:

STEPHEN H. CAGLE, JR.
JOE E. LUCE
GARY M. JEWELL
CHRISTIAN, SMITH & JEWELL, L.L.P.
2302 FANNIN, SUITE 500
HOUSTON, TEXAS 77002

/s/ NORMA VENSO

NORMA VENSO



c:word.griffin_anthony_[schlein_barbara]_plaintiff(s)_second_amended_petition

Cross-Appellant's Appendix34

000632

**APPENDIX, TAB 5- ORDER DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

000429

## CAUSE NO. CV 69481

| ANTHONY GRIFFIN | § | IN THE COUNTY COURT AT LAW |
| *Plaintiff* | § | |
| | § | NO. 2 |
| V. | § | |
| | § | GALVESTON COUNTY, TEXAS |
| BARBARA REGINA SCHLEIN | § | |
| *Defendant* | § | |

### ORDER DENYING PLAINTIFF'S
### PARTIAL MOTION FOR SUMMARY JUDGMENT

CAME ON THIS DAY for consideration, Plaintiff Anthony Griffin's Partial Motion for Summary Judgment. After considering Plaintiff's Motion, Defendant's opposition, arguments of counsel, and the law, the Court finds that Plaintiff's Motion should be denied. It is therefore,

**ORDERED** that Plaintiff's Partial Motion for Summary Judgment is Denied.

Signed this 27th day of December 2013.

_____
**BARBARA E. ROBERTS, JUDGE PRESIDING**



000429

**APPENDIX, TAB 6- ORDER DENYING DEFENDANT'S
PARTIAL MOTION FOR SUMMARY JUDGMENT**

000760

## CAUSE NO. CV 69481

| ANTHONY GRIFFIN | § | IN THE COUNTY COURT AT LAW |
|---|---|---|
| | § | |
| V. | § | NO. 2 |
| | § | |
| BARBARA REGINA SCHLEIN | § | GALVESTON COUNTY, TEXAS |

## ORDER DENYING DEFENDANT'S TRADITIONAL MOTION FOR PARTIAL SUMMARY JUDGMENT

CAME ON THIS DAY for consideration, Defendant Barbara Schlein's Traditional Motion for Partial Summary Judgment. After considering Defendant's Motion, Plaintiff's opposition, arguments of counsel, and the law, the Court finds that Defendant's Motion should be denied. It is therefore,

**ORDERED** that Defendant Barbara Schlein's Traditional Motion for Partial Summary Judgment is Denied.

Signed this 28th day of February 2014.

_____
BARBARA E. ROBERTS, JUDGE PRESIDING



000760

**APPENDIX, TAB 7- COURT'S CHARGE**

FILED
2:49pm
MAY 2 3 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

ANTHONY GRIFFIN
    *Plaintiff,*

v.

BARBARA REGINA SCHLEIN
    *Defendant.*

§
§
§
§
§
§
§
§
§

IN THE COUNTY COURT

AT LAW NO. 2

GALVESTON COUNTY, TEXAS

## COURT'S CHARGE

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which have previously been given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1. Do not let bias, prejudice or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the court, that is, what you have seen and heard in this courtroom, together with the law as given you by the court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3. Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions and do not discuss nor concern yourselves with the effect of your answers.

5. You will not decide the answer to a question by a lot or by drawing straws, or by any other means of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

Cross-Appellant's Appendix40

6.    Unless otherwise instructed, you may answer a question upon the vote of 5 or more jurors. If you answer more than one question upon the vote of 5 or more jurors, the same group of at least 5 of you must agree upon the answers to each of those questions.

7.    Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense which varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence *unless otherwise instructed.* If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No." The term "preponderance of the evidence" means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case. Whenever a question requires an answer other than "Yes" or "No," your answer must be based upon a preponderance of the evidence *unless otherwise instructed.*

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

If you answer questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of the instructions in or your answers to any other questions about damages. Do not speculate about what any party's ultimate recovery

Cross-Appellant's Appendix41

may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

After you retire to the jury room you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror:

1. To preside during your deliberations;

2. To see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge;

3. To write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the court;

4. To vote on the questions;

5. To write your answers to the questions in the space provided; and

6. To certify your verdict in the space provided for the presiding juror's signature or to obtain the signature of all the jurors who agree with the verdict if your verdict is less than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the court of this fact.

When you have answered all the questions you are required to answer under the instructions of the court and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return to the court with your verdict.

FILED
2:49pm
MAY 23 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Barbara E Roberts
**JUDGE PRESIDING**

Cross-Appellant's Appendix42

## QUESTION NO. 1

Did Barbara Schlein fail to comply with the terms of the agreement for legal services dated November 3, 2009, between her and Anthony P. Griffin d/b/a A Griffin Lawyers?

Answer "Yes" or "No"

ANSWER: _____Yes_____

FILED
12:15pm
MAY 2 7 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix43

## QUESTION NO. 2

Did Anthony Griffin fail to comply with the agreement for legal services dated November 3, 2009?

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

a. the extent to which the injured party will be deprived of the benefit which he reasonably expected; no

b. the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; no

c. the extent to which the party failing to perform or to offer to perform will suffer forfeiture; no

d. the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances; no

e. the extent to which the behavior of the party failing to perform or to offer to perform comports with the standards of good faith and fair dealing. no

Answer "Yes" or "No"

ANSWER: ___No___



FILED
MAY 27 2014  12:15pm
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix44

If you answered "Yes" to both Question 1 and Question 2, then answer the following question. Otherwise, do not answer the following question.

**QUESTION NO. 3**

Who failed to comply with the Agreement first?

Answer "Anthony Griffin" or "Barbara Schlein."

ANSWER: _____N/A_____



FILED
MAY 27 2014 12:15pm
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By DeniseJordan

Cross-Appellant's Appendix45

If you answered "Yes" to Question 1, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 4

Was Barbara Schlein's failure to comply excused?

Failure to comply by Barbara Schlein is excused by Anthony Griffin's previous failure, if any, to comply with a material obligation of the same agreement.

Failure to comply by Barbara Schlein is excused if compliance is waived by Anthony Griffin.

"Waiver" is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Failure to comply by Barbara Schlein is excused if the following circumstances occurred:

1. Anthony Griffin
   a. by words or conduct made a false representation or concealed material facts, and *no*
   b. with knowledge of the facts or with knowledge or information that would lead a reasonable person to discover the facts, and *no*
   c. with the intention that Barbara Schlein would rely on the false representation or concealment in acting or deciding not to act; and *no*
2. Barbara Schlein
   a. did not know and had no means of knowing the real facts, and *no*
   b. relied to her detriment on the false representation or concealment of material facts. *no*

Failure to comply with one agreement is excused if the parties agreed that a new agreement would take its place. *no*

Failure to comply with a term in an agreement is excused if the parties agreed that a new term would take its place. *no*

Failure to comply with an agreement is excused if a different performance was accepted as full satisfaction of performance of the original obligations of the agreement. *no*

Answer "Yes" or "No"?

ANSWER: _____No_____

FILED
MAY 27 2014  12:15pm
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix46

If you answered "Yes" to Question 1, then answer the following question. Otherwise, do not answer the following question

You are instructed that any monetary recovery for economic damages is subject to federal income taxes.

**QUESTION NO. 5**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Anthony P. Griffin d/b/a A Griffin Lawyers, for his damages, if any, that resulted from such failure to comply?

Consider the following elements of damages, if any, and none other.

a  Attorneys' fees incurred in the representation of Barbara Schlein in her divorce from Robert Schlein.

ANSWER: $105,750

b. Costs incurred by Anthony P. Griffin in the representation of Barbara Schlein in her divorce from Robert Schlein.

ANSWER: $22,399.29

FILED
MAY 27 2014 12:15pm
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix47

If you answered "Yes" to Question 2, then answer the following question. Otherwise, do not answer the following question

**QUESTION NO. 6**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Barbara Schlein for her damages, if any, that resulted from such failure to comply?

Consider the following elements of damages, if any, and none other.

a.     The reasonable and necessary attorney's fees and costs incurred to complete the divorce matter started but not finished by Anthony Griffin.

ANSWER: _____N/A_____

b.     The reasonable and necessary attorney's fees and costs incurred to complete the other matters started but not finished by Anthony Griffin.

ANSWER: _____N/A_____

FILED
MAY 27 2014    12:15 pm
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix48

## QUESTION NO. 7

What is a reasonable fee for the necessary services of Anthony P. Griffin's attorney in this case, stated in dollars and cents?

The following factors must be considered in determining the reasonableness of an attorney's fee award:

- The time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;
- The likelihood that the acceptance of the particular employment will preclude other employment of the lawyer;
- The fee customarily charged in the locality for similar legal services;
- The amount involved and the results obtained;
- The time limitations imposed by the client or the circumstances;
- The nature and length of the professional relationship with the client;
- The experience, reputation, and ability of the lawyer or lawyers performing the services; and
- Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Answer with an amount for each of the following:

A. For preparation and trial.

ANSWER:  $62,836         .

B. For an appeal to the Court of Appeals.

ANSWER:  $15,000         .

C. For an appeal to the Supreme Court of Texas

ANSWER:  $25,000         .

FILED
12:15pm
MAY 2 7 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix49

If you answered "Yes" to Question 2, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 8

What is a reasonable fee for the necessary services of Barbara Schlein's attorney in this case, stated in dollars and cents?

Answer with an amount for each of the following:

a. For pre-trial representation and representation in the trial court.

ANSWER: _____N/A_____

b. For representation through an appeal to the Court of Appeals.

ANSWER: _____N/A_____

c. For representation the petition for review stage in the Supreme Court of Texas.

ANSWER: _____N/A_____

d. For representation in the merits briefing stage in the Supreme Court of Texas.

ANSWER: _____N/A_____

e. For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

ANSWER: _____N/A_____

FILED
12:15pm
MAY 27 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix50

**QUESTION NO. 9**

Did Barbara Schlein substantially rely to her detriment on Anthony Griffin's promise, if any, and was this reliance foreseeable by Anthony Griffin?

Answer "Yes" or "No."

ANSWER: _____No_____

FILED
12:15 pm
MAY 2 7 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix51

If you answered "Yes" to Question 9, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 10

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Barbara Schlein for her damages, if any, that resulted from her reliance on Anthony Griffin's promise?

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

a.      Answer separately in dollars and cents for damages, if any.

ANSWER: _____ N/A _____

b.      The reasonable and necessary attorney's fees and costs incurred to complete the divorce matter started but not finished by Anthony Griffin.

ANSWER: _____ N/A _____

c.      The reasonable and necessary attorney's fees and costs incurred to complete the other matters started but not finished by Anthony Griffin.

ANSWER: _____ N/A _____

FILED
12:15pm
MAY 27 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix52

## QUESTION NO. 11

Did Anthony Griffin fail to comply with his fiduciary duty to Barbara Schlein?

As Barbara Schlein's attorney, Anthony Griffin owed Barbara Schlein a fiduciary duty.

To prove Anthony Griffin failed to comply with his fiduciary duty, Barbara Schlein must show:

      a.    the transactions and actions in question were not fair and equitable to Barbara Schlein; or ✗

      b.    Anthony Griffin did not make reasonable use of the confidences that Barbara Schlein placed in him; or ✗

      c.    Anthony Griffin failed to act in the utmost good faith or exercise the most scrupulous honesty toward Barbara Schlein; or ✗

      d.    Anthony Griffin placed his own interests before Barbara Schlein's, used the advantage of his position to gain a benefit for himself at the expense of Barbara Schlein, or placed himself in a position where his self-interest might conflict with his obligations as a fiduciary; or ✗

      e.    Anthony Griffin failed to fully and fairly disclose all important information to Barbara Schlein concerning the transactions. ✗

Answer "Yes" or "No."

ANSWER:   No

FILED
12:15 pm
MAY 27 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By DeniseJordan


Cross-Appellant's Appendix53

If you answered "Yes" to Question 11, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 12

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Barbara Schlein for her damages, if any, that were proximately caused by such conduct?

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

a. The amount, if any, that Barbara Schlein paid in excess to Anthony Griffin for legal services promised by Anthony Griffin.

ANSWER: _____N/A_____

b. the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete the divorce matter started by Anthony Griffin.

ANSWER: _____N/A_____

c. the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete the other matters started by Anthony Griffin.

ANSWER: _____N/A_____

FILED
MAY 27 2014 12:15 pm
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix54

d.    the difference between the sales price of Barbara Schlein's house located at 1628 Enterprise Avenue at foreclosure and the value of the house if repairs had been made because of the filing of an insurance claim.

ANSWER: _____ N/A _____

e.    mental anguish sustained from November 3, 2009 to date.

"Mental anguish" means the emotional pain, torment and suffering experienced by Barbara Schlein.

ANSWER: _____ N/A _____

FILED
MAY 27 2014 12:15pm
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix55

## QUESTION NO. 13

Did Anthony Griffin commit fraud against Barbara Schlein?

Fraud occurs when:
- a. a party makes a material misrepresentation, and
- b. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and
- c. the misrepresentation is made with the intention that it should be acted on by the other party, and
- d. the other party relies on the misrepresentation and thereby suffers injury; or
- e. a party fails to disclose a material fact within the knowledge of that party, and
- f. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and
- g. the party intends to induce the other party to take some action by failing to disclose the fact, and
- h. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

"Misrepresentation" means:
- a. A false statement of fact; or
- b. A promise of future performance made with an intent, at the time the promise was made, not to perform as promised; or
- c. A statement of opinion based on a false statement of fact; or
- d. A statement of opinion that the maker knows to be false.

Answer "Yes" or "No."

ANSWER: _____NO_____

FILED
MAY 27 2014 12:15pm
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By DeniSeJordan

Cross-Appellant's Appendix 56

If you answered "Yes" to Question 13, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 14

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Barbara Schlein for her damages, if any, that resulted from such fraud?

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

a.      the amount, if any, Barbara Schlein paid in excess to Anthony Griffin for legal services promised by Anthony Griffin.

ANSWER: _____ N/A _____

b.      the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete the divorce matter started by Anthony Griffin.

ANSWER: _____ N/A _____

c.      the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete the other matters started by Anthony Griffin.

ANSWER: _____ N/A _____

d.      mental anguish sustained from November 3, 2009 to date.

"Mental anguish" means the emotional pain, torment and suffering experienced by Barbara Schlein.

ANSWER: _____ N/A _____

FILED
12:15 pm
MAY 27 2011
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix57

If you answered "Yes" to Question 13, then answer the following question. Otherwise, do not answer the following question.

**QUESTION NO. 15**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Barbara Schlein for her damages, if any, that were proximately caused by such fraud?

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

a. the amount, if any, Barbara Schlein paid in excess to Anthony Griffin for legal services promised by Anthony Griffin.

ANSWER: _____N/A_____

b. the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete the divorce matter started by Anthony Griffin.

ANSWER: _____N/A_____

c. the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete the other matters started by Anthony Griffin.

ANSWER: _____N/A_____

FILED
12:15am
MAY 27 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix58

d. mental anguish sustained from November 3, 2009 to date.

"Mental anguish" means the emotional pain, torment and suffering experienced by Barbara Schlein.

ANSWER: _____N/A_____

Unofficial

FILED
12:15pm
MAY 27 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix59

Answer the following question only if you unanimously answered "Yes" to Question 11 or Question 13. Otherwise, do not answer the following question.

To answer "Yes" to any part of the following question, your answer must be unanimous. You may answer "No" to any part of the following question only upon a vote of 5 or more jurors. Otherwise, you must not answer that part of the following question.

## QUESTION NO. 16

Did you find by clear and convincing evidence that the harm to Barbara Schlein resulted from malice or fraud?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by Anthony Griffin to cause substantial injury or harm to Barbara Schlein.

Fraud occurs when:

a.    a party makes a material representation, and

b.    the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

c.    the misrepresentation is made with the intention that it should be acted on by the other party, and

d.    the other party relies on the misrepresentation and thereby suffers injury, or

e.    a party fails to disclose a material fact within the knowledge of that party, and

f.    the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and

g.    the party intends to induce the other party to take some action by failing to disclose the fact, and

h.    the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

Answer "Yes" or "No."

ANSWER: ___N/A___

FILED
MAY 27 20__ 12:15pm
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix60

## QUESTION NO. 17

Did Anthony Griffin engage in any false, misleading, or deceptive act or practice that Barbara Schlein relied on to her detriment and that was a producing cause of damages to Barbara Schlein?

"Producing cause" means a cause that was a substantial factor in bringing about the damages, if any, and without which the damages would not have occurred. There may be more than one producing cause.

"False, misleading, or deceptive act or practice" means any of the following:

a. Making false or misleading statements of fact concerning the reason for, existence of, or amount of price reduction; or *no*

b. Representing that an agreement confers or involves rights that it did not have or involve; or *no*

c. Advertising goods or services with intent not to sell them as advertised, or *no*

d. Failing to disclose information about goods or services that was known at the time of the transaction with the intention to induce Barbara Schlein into a transaction she otherwise would not have entered into if the information had been disclosed. *no*

Answer "Yes" or "No."

ANSWER: ___No___

FILED
12:15pm
MAY 27 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix61

**QUESTION NO. 18**

Did Anthony Griffin engage in any unconscionable action or course of action that was a producing cause of damages to Barbara Schlein?

"Producing cause" means a cause that was a substantial factor in bringing about the damages, if any, and without which the damages would not have occurred. There may be more than one producing cause.

An "unconscionable action" or "course of action" is an act or practice that, to a customer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.

Answer "Yes" or "No."

ANSWER: ___Yes___

FILED
12:15 pm
MAY 2 7 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix62

If you answered "Yes" to Question 17 or Question 18, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 19

Did Anthony Griffin engage in any such conduct knowingly or intentionally?

"Knowingly" means actual awareness of the falsity, unfairness, or deceptiveness of the act or practice on which a claim for damages is based. Actual awareness may be inferred if objective manifestations indicate that a person acted with actual awareness.

Did Anthony Griffin engage in any such conduct intentionally?

"Intentionally" means actual awareness of the falsity, deception, or unfairness of the conduct in question, coupled with the specific intent that the consumer act in detrimental reliance on the falsity or deception. Specific intent may be inferred where objective manifestations indicate that a person acted intentionally.

In answering this question, consider only the conduct that you have found was a producing cause of damages to Barbara Schlein.

Answer "Yes" or "No."

ANSWER: _____Yes_____

FILED
12:15pm
MAY 27 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denisa Jordan

Cross-Appellant's Appendix63

If you answered "Yes" to Question 17 or Question 18, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 20

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Barbara Schlein for her damages, if any, that resulted from such conduct?

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

a.      the amount, if any, Barbara Schlein paid in excess to Anthony Griffin for legal services promised by Anthony Griffin.

ANSWER: _____ $0 _____

b.      the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete the divorce matter started by Anthony Griffin.

ANSWER: _____ $0 _____

c.      the amount of reasonable and necessary attorney's fees incurred as a result of Barbara Schlein having to hire new attorneys to complete the other matters started by Anthony Griffin.

ANSWER: _____ $0 _____



FILED
12:15pm
MAY 27 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix64

If you answered "Yes" to Question 19, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 21

What sum of money, if any, in addition to actual damages, should be awarded to Barbara Schlein against Anthony Griffin because Anthony Griffin's conduct was committed knowingly or intentionally?

Answer in dollars and cents, if any.

ANSWER: _____$5,000.00_____

FILED
MAY 27 2014 12:15pm
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix65

If you answered "Yes" to Question 17, then answer the following question. Otherwise, do not answer the following question.

**QUESTION NO. 22**

What is a reasonable fee for the necessary services of Barbara Schlein's attorney in this case, stated in dollars and cents?

Answer with an amount for each of the following:

a.      For pre-trial representation and representation in the trial court.

ANSWER: _____ N/A _____

b.      For representation through an appeal to the Court of Appeals.

ANSWER: _____ N/A _____

c.      For representation the petition for review stage in the Supreme Court of Texas.

ANSWER: _____ N/A _____

d.      For representation in the merits briefing stage in the Supreme Court of Texas.

ANSWER: _____ N/A _____

e.      For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

ANSWER: _____ N/A _____



FILED
12:15pm
MAY 27 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix66

Answer the following question regarding Anthony Griffin only if you unanimously answered "Yes" to Question 16 regarding Anthony Griffin. Otherwise, do not answer the following question regarding Anthony Griffin.

## QUESTION NO. 23

You are instructed that you must unanimously agree on the amount of any award of exemplary damages.

What sum of money, if any, should be assessed against Anthony Griffin and awarded to Barbara Schlein as exemplary damages for the conduct found in response to Question 16?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages include punitive damages.

Factors to consider in awarding exemplary damages, if any are:
a.    The nature of the wrong.
b.    The character of the conduct involved.
c.    The degree of culpability of the wrongdoer.
d.    The situation and sensibilities of the parties concerned.
e.    The extent to which such conduct offends a public sense of justice and propriety.

Answer in dollars and cents, if any.

ANSWER:_____N/A_____

FILED
12:15pm
MAY 27 2014
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix67

## Certificate

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return the same into court as our verdict.

(To be signed by the presiding juror if unanimous.)

_____
PRESIDING JUROR

David Simon
_____
Printed Name of the Presiding Juror

(To be signed by those rendering the verdict if not unanimous.)

| Jurors' Signatures | Jurors' Printed Names |
| --- | --- |
| | David Simon |
| Andrea Tyra | Andrea Tyra |
| | Jessika Bush |
| Ellen Lopez | Ellen Lopez |
| | Tori Massey |
| Marylou Morales | MARYLou Morales |

FILED
MAY 2 7 2014  12:15pm
DWIGHT D. SULLIVAN COUNTY CLERK
GALVESTON CO., TEXAS
By Denise Jordan

Cross-Appellant's Appendix68

**APPENDIX, TAB 8- VERDICT**

REPORTER'S RECORD
VOLUME 13 OF 19 VOLUMES
TRIAL COURT CAUSE NO. CV-0069481
APPELLATE COURT CAUSE NO. 01-14-00799-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/28/2014 3:07:32 PM
CHRISTOPHER A. PRINE
Clerk

ANTHONY P. GRIFFIN ) IN THE COUNTY COURT
)
vs. ) AT LAW NO. 2
)
BARBARA REGINA SCHLEIN ) GALVESTON COUNTY, TEXAS

_____

**VERDICT**

_____

On the 27th day of May, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Barbara Roberts, Judge Presiding, held in Galveston, Galveston County, Texas.

Proceedings reported by computerized stenotype machine.

Cross-Appellant's Appendix70

**APPEARANCES**

Ms. Norma Venso
SBOT NO. 20545250
Clear Lake Arbitration
830 Apollo Lane
Houston, Texas 77058
Telephone:  409.789.8661
Fax:  409.737.9245
E-mail:  nvenso@earthlink.net
Counsel for Plaintiff

Mr. Stephen H. Cagle, Jr.
SBOT NO. 12314500
        and
Ms. Heather Panick
SBOT NO. 24062935
Christian, Smith & Jewell, LLP
2302 Fannin, Suite 500
Houston, Texas 77002
Telephone:  713.659.7617
Fax:  713.659.7641
E-mail:  scagle@csi-law.com
Counsel for Defendant

Mr. Stephen R. 'Stretch' Lewis, Jr.
SBOT NO. 12314500
Attorney-at-Law
2200 Market St., Suite 750
Galveston, Texas 77550-1551
Telephone:  409.762.1900
Counsel for Defendant

**INDEX**
**VOLUME 13**
**VERDICT**

May 27th, 2014                        Page No.   Vol.

Appearances .........................    2       13

Jury questions ......................    3       13

Jury Verdict ........................    3       13

Reporter's Certificate ..............    7       13

THE COURT: The first question is: "Can we see the tile?"

And I'm going to say, "Yes, the bailiff will bring it to them."

The second is: "Can we choose who gets the tile?"

MS. VENSO: I knew that would be an issue. I think we just have to answer that that you only answer the questions in the Court's charge.

THE COURT: Right. Okay.

Are you okay with that?

MR. CAGLE: I'm okay with that.

THE COURT: All right. "Yes, you may see the tile. The bailiff will bring it to you."

Two will be: "Answer the questions proposed, or answer the questions submitted?"

MR. CAGLE: I think either is fine.

THE COURT: I understand from the bailiff that they're going to work through lunch until 1:00 O'clock; and then they will leave because one of the juror's 5-year-old daughter is apparently ill; and so mom needs to get home; but they want to return early tomorrow. I think they're talking about 8:00 or 8:30. So we'll get a definite time and let everyone know.

(Recess taken)

THE COURT: I understand the jury has reached a verdict; is that correct?

THE FOREPERSON: Yes, your Honor.

THE COURT: All right. Would you hand the verdict to the bailiff, please?

All right. Question No. 1: Yes.

Question 2: No.

Question 3 is not applicable.

Question 4: No.

Question 5: A is $105,750.

5 B) $22,399.29.

Question 6 is not answered.

7 A) $62,836. B) 15,000 C) 25,000.

Question 8: A through E are marked NA.

Question 9: No.

Question 10: A, B, and C are marked NA.

Question 11: No.

Question 12: A, B, C, D, and E are marked NA.

Question 13: No.

Question 14: A, B, C, D: NA.

Question 15: A, B, C, D: NA.

Question 16: NA.

Question 17: No.

Question 18: Yes.

Question 19:  Yes.

Question 20:  A) zero.  B) zero.  C) zero.

Question 21:  Answer:  $5,000.

Question 22:  A, B, C, D, E:  NA.

Question 23:  NA.

All right.  And the presiding juror has signed it and so has all six jurors -- is that correct -- this was unanimous?

THE FOREPERSON:  Yes.

THE COURT:  All right.  Does anybody need the jury poled?

MS. VENSO:  No, your Honor.

MR. CAGLE:  No, your Honor.

THE COURT:  All right.  I'm going to release the jury.

Okay.  Ladies and gentlemen, I'm releasing you from all instructions.  You may update your status on Facebook.  You may talk about this case with anyone.  I will tell you that frequently the attorneys like to talk to members of the jury, just to see what may suede you one way or the other, but just to talk to you.  That is totally your discretion.  You may speak to one or more of the attorneys in this matter if you wish to or if you don't wish to, you're under no

obligation to do so.

You may now follow the bailiff to get your personal belongings, and I'll be right back there to answer any questions or concern you may have.

(Proceedings concluded)

STATE OF TEXAS

COUNTY OF GALVESTON


I, Jana Fowler, Official Court Reporter in and for the County Court at Law No. 2 of Galveston, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $38.50 and was paid Mr. Cagle.

/s/Jana Fowler

Jana Fowler, CSR
Texas CSR 8658
Official Court Reporter
County Court at Law No. 2
Galveston County, Texas
600 59th Street
Galveston, Texas 77551
Telephone: 409.765.2407
Expiration: 12/31/2014



**APPENDIX, TAB 9- ORDER DENYING PLAINTIFF'S MOTIONFOR JUDGMENT NOTWITHSTANDING VERDIC**

001208

CAUSE NO. CV-0069481

| ANTHONY GRIFFIN | § | IN THE COUNTY COURT |
|---|---|---|
| *Plaintiff,* | § | |
| | § | |
| v. | § | AT LAW NO. 2 |
| | § | |
| BARBARA REGINA SCHLEIN | § | |
| *Defendant.* | § | GALVESTON COUNTY, TEXAS |

## ORDER DENYING PLAINTIFFS' MOTION FOR
## JUDGMENT NOTWITHSTANDING THE VERDICT

On this day, the Court considered Plaintiffs' Motion for Judgment Notwithstanding the Verdict and after considering the motion, the response and argument of counsel, the Court hereby denies the motion.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Judgment Notwithstanding the Verdict is denied. It is further

ORDERED that Defendant's objections to Plaintiff's proposed judgment are sustained.

6/30/14
/Date

*Barbara E Robert*
Judge Presiding

FILED

14 JUL -1 AM 8: 23

*Dwight D. Sullivan*
COUNTY CLERK
GALVESTON COUNTY, TEXAS

**APPENDIX, TAB 10 – FINAL JUDGMENT**

001249

CAUSE NO. CV-0069481

| ANTHONY P. GRIFFIN | § | IN THE COUNTY COURT |
| *Plaintiff,* | § | |
| | § | |
| V. | § | AT LAW NO. 2 |
| | § | |
| BARBARA REGINA SCHLEIN | § | GALVESTON COUNTY, TEXAS |
| *Defendant.* | § | |

## ~~PROPOSED~~ FINAL JUDGMENT

On May 7, 2014, the above-entitled and numbered cause was called to trial. Plaintiff Anthony P. Griffin ~~and A. Griffin Lawyers~~ *D/B/A* and Defendant Barbara Schlein appeared and announced ready for trial. After a jury was empaneled and sworn, it heard evidence and arguments of counsel. At the conclusion of the evidence, the Court submitted the questions of fact in the case to the jury. In response to the jury charge, the jury made findings that the court received, filed and entered. The charge of the court and the verdict of the jury are incorporated for all purposes by reference.

The Court is of the opinion and finds that Final Judgment should be entered on the evidence and the verdict of the jury. The Court having considered the verdict of the jury finds that Plaintiff *Anthony P. Griffin D/B/A* ~~A~~ Griffin Lawyers is entitled to recover from Defendant Barbara Schlein, actual damages and attorneys' fees as set forth below.

It is therefore ORDERED, ADJUDGED and DECREED and FINAL JUDGMENT IS HEREBY RENDERED that Plaintiff *Anthony P. Griffin D/B/A* ~~A~~ Griffin Lawyers have and recover of and from Defendant Barbara Schlein, as follows:

a) Actual damages in the sum of ONE HUNDRED TWENTY EIGHT THOUSAND ONE HUNDRED FORTY NINE and 29/100 DOLLARS ($128,149.29) FILED

b) The sum of SIXTY TWO THOUSAND EIGHT HUNDRED SIXTY TWO AND 00/100 DOLLARS ($62,862.00) for reasonable and necessary attorney's fees for preparation and trial;

*Dwight A. Sullivan*
COUNTY CLERK
GALVESTON COUNTY, TEXAS

Ex. 1

001250

c) The sum of ~~FIFTY~~ *Fifteen* THOUSAND AND 00/100 DOLLARS ($15,000.00) in the event of an appeal to the Court of Appeals; for reasonable and necessary attorney's fees for representation through appeal to the Court of Appeals.

d) The sum of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) in the event of an appeal to the Supreme Court of Texas for reasonable and necessary attorney's fees for representation at the petition for review stage in the Supreme Court of Texas.

e) Prejudgment interest on the sum of SIXTEEN THOUSAND EIGHTEEN AND 66/100 DOLLARS ($16,018.66).

f) Post judgment interest on the total sum awarded at the annual rate of Five Percent (5%).

g) Taxable costs of court.

It is further ORDERED, ADJUDGED and DECREED that Defendant/Counter-Plaintiff Schlein have and recover from Plaintiff/Counter Defendant Anthony Griffin *D/B/A A. Griffin Lawyers* damages in the sum of FIVE THOUSAND AND 00/100 DOLLARS ($5,000.00) resulting from Griffin's unconscionable action or course of action, which was committed knowingly or intentionally.

It is further ORDERED, ADJUDGED and DECREED that all writs and processes for the enforcement and collection of this Judgment or the costs of court may issue as necessary.

All relief not expressly granted is denied.

This is a final judgment which disposes of all claims and all parties and is appealable.

SIGNED this 30 day of June, 2014.

*Barbara E. Roberts*
JUDGE PRESIDING

FILED
14 JUL -1 AM 8: 24

APPROVED AS TO FORM ONLY – Defendant (1) disagrees with the content of this judgment (2) agrees only to the form of this judgment, and (3) plans to appeal this judgment. Therefore, Defendant expressly reserves all rights to modify or appeal this proposed judgment. See First Nat. Bank v. Fojtik, 775 S.W.2d 632, 633 (Tex. 1989)

**APPENDIX, TAB 11 – ORDER ON DEFENDANT'S MOTION FOR NEW TRIAL**

001245

CAUSE NO. CV-0069481

| | | |
|---|---|---|
| ANTHONY GRIFFIN | § | IN THE COUNTY COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | AT LAW NO. 2 |
| | § | |
| BARBARA REGINA SCHLEIN | § | |
| *Defendant.* | § | GALVESTON COUNTY, TEXAS |

## ORDER ON DEFENDANT'S MOTION FOR NEW TRIAL

The Court has considered the Defendant's Motion for New Trial. It is ORDERED that Defendant's Motion for New Trial is *Denied.*

~~GRANTED~~ ~~DENIED and the Final Judgment dated June 30, 2014 is VACATED~~.

SIGNED this __11__ day of __Sept__, 2014.

_Barbara E Roberts_
JUDGE PRESIDING

FILED

14 SEP 12 AM 9: 58

_Dwight D. Sullivan_
COUNTY CLERK
GALVESTON COUNTY, TEXAS

ORDER ON DEFENDANT'S FIRST MOTION FOR NEW TRIAL                    PAGE 1 OF 1

Cross-Appellant's Appendix83                    001245

**APPENDIX, TAB 12 – DEFENDANT'S NOTICE OF APPEAL**

Filed
9/26/2014 2:32:09 PM
Dwight D. Sullivan
County Clerk
Galveston County, Texas

CAUSE NO. CV-0069481

| | | |
|---|---|---|
| ANTHONY GRIFFIN | § | IN THE COUNTY COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | AT LAW NO. 2 |
| | § | |
| BARBARA REGINA SCHLEIN | § | |
| *Defendant.* | § | GALVESTON COUNTY, TEXAS |

## DEFENDANT'S NOTICE OF APPEAL

COMES NOW, Defendant Barbara Regina Schlein ("Schlein") and files her Notice of Appeal pursuant to Texas Rule of Appellate Procedure 25.1.

Please take notice that Defendant desires to appeal to either the First or Fourteenth Circuit of Appeals the Final Judgment in Cause No. CV-0069481; Anthony Griffin v. Barbara Regina Schlein; in the County Court at Law No. 2, Galveston County, Texas on June 30, 2014. A copy of the Final Judgment is attached hereto as Exhibit 1.

Pursuant to the Texas Rule of Appellate Procedure 26.1(a)(1) the deadline for filing this Notice of Appeal is Monday, September 29, 2014 as Defendant timely filed a Motion for New Trial.

Respectfully submitted,

**CHRISTIAN SMITH & JEWELL, LLP**

By:    /s/ *Stephen H. Cagle, Jr.*
STEPHEN H. CAGLE, JR.
State Bar No. 24045596
HEATHER C. PANICK
State Bar No. 24062935
2302 Fannin, Suite 500
Houston, Texas 77002
(713) 659-7617 (Phone)
(713) 659-7641 (Fax)

**ATTORNEYS FOR DEFENDANT**

DEFENDANT'S NOTICE OF APPEAL

Cross-Appellant's Appendix85

001247

001248

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of September, 2014, a true and correct copy of the above and foregoing document has been duly served upon all attorneys of record via hand delivery and/or facsimile and/or regular mail and/or certified mail, return receipt requested and/or by eService.

Norma Venso
Attorney at Law
830 Apollo
Houston, Texas 77058
Phone: (409) 789-8661
Fax: (281) 286-9990

Stephen R. "Stretch" Lewis, Jr.
Lewis & Williams, LLP
2200 Market Street, Suite 750
Galveston, Texas 77550
Phone: (409) 762-1900
Fax: (409) 762-4606

    /s/ *Stephen H. Cagle, Jr.*
Stephen H. Cagle, Jr.

**APPENDIX, TAB 13 – PLAINTIFF'S CROSS-NOTICE**

**OF APPEAL**

Filed
10/10/2014 6:13:22 PM
Dwight D. Sullivan
County Clerk
Galveston County, Texas

CAUSE NO. CV0069481

ANTHONY P. GRIFFIN                        IN THE COUNTY COURT

V.                                        AT LAW NO. 2

BARBARA REGINA SCHLEIN            GALVESTON COUNTY, TEXAS

PLAINTIFFS', ANTHONY P. GRIFFIN,
CROSS NOTICE OF APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff/Counter-Defendant, hereinafter referenced as Griffin, files this his cross-notice of appeal. Griffin would show unto the Court as follows:

I.

On Finding Adverse to Griffin

Griffin appeals the finding adverse to Griffin (finding of unconscionable conduct and a $5,000.00 damage award. This appeal is to the Court of Appeals and is a cross-appeal from the appeal of Barbara Schlein on September 26, 2014 (case already assigned to a Court).

DATE: October 10, 2014.

Respectfully submitted,

/s/ NORMA VENSO

_____

NORMA VENSO

1

Cross-Appellant's Appendix88

001252

ATTORNEY AT LAW
830 APOLLO
HOUSTON, TEXAS 77058
409.789.8661
FACSIMILE NO. 281.286.9990

STATE BAR NO. 20545250

ATTORNEYS FOR PLAINTIFF/
COUNTER-DEFENDANT GRIFFIN

2
Cross-Appellant's Appendix89

001252

001253

# CERTIFICATE OF SERVICE

This is to certify that on this the 10th day of October, 2014, a true and correct copy of the foregoing Plaintiff /Counter-Defendant's Cross-Appeal was forwarded to opposing counsel by facsimile transmission and regular mail (confirmation copy), to-wit:

STEPHEN H. CAGLE, JR.
JOE E. LUCE
GARY M. JEWELL
CHRISTIAN, SMITH & JEWELL, L.L.P.
2302 FANNIN, SUITE 500
HOUSTON, TEXAS 77002

/s/ NORMA VENSO

_____

NORMA VENSO

c:word.griffin_anthony_[schlein_barbaral]_plaintiff_cross_notice_appeal

001253

**APPENDIX, TAB 14 – CONTRACTUAL AGREEMENT AND COVER LETTER**

November 3, 2009

## CONTRACTUAL AGREEMENT

### Parties to Agreement

This is to authorize A GRIFFIN LAWYERS/ANTHONY P. GRIFFIN, INC., hereinafter and sometimes referred to as LAWYERS, to act as lawyers for the undersigned, BARBARA REGINA SCHLEIN, hereinafter and sometimes referred to as CLIENT(S), relative to all matters concerning the divorce/family related matter/civil issues (tort issues) in a matter styled In the Matter of the Marriage of Barbara Regina Schlein and Robert Schlein; In the County Court at Law, No. 2; Galveston County, Texas; Cause No. 08FD2371.

### You are Hiring Us to Do What?

1. To investigate your case to determine the viability of the case.

2. To advise you as to the viability of same.

3. To work with you with respect to your case including appearing on your behalf before any corporation, official, board, department, administrative body or to



PLAINTIFF'S EXHIBIT 1

PENGAD 800-631-6989

file suit and in any Court (Federal or State), if necessary and if warranted.

Retainer/What is it?/What does It Mean?/What It Isn't?

1.  In consideration of the services rendered and to be rendered to client by the said law firm, the client agrees to pay $35,000.00 (normal retainer $10,000.00 - $25,000.00) as a retainer fee.[1]

2.  The retainer is based upon the history of the litigation, substituting in with a pending matter (mentioned above) and the firm's obligation to make sense of the disparate parts of the above matter and other related matters (amending pleadings, joining claims), etc.

2.  Your retainer is the consideration to hire A GRIFFIN LAWYERS/ANTHONY P. GRIFFIN, INC., LAWYERS. As stated in the oral interview, the retainer herein and attorneys' fees are structured with the reputation of the firm, the related matters necessary to process the family matter (tort allegations by Petitioner and/or on behalf of the minor child), consistent with the

---

[1] Currently Petitioner is under an order of the Court that prevents the expenditure of funds without the approval of the Court. No payment of fees will take place unless and until the Court approves the payment of the retainer amount and/or an order is entered releasing the injunction overbroad scope (can be interpreted to include separate property of Petitioner). The attorneys anticipate filing a motion with the Court to address the broadness of the order and/or releasing of funds to pay the subject retainer.

concept of reasonable attorney's fees based upon the complexity of the issues at hand. The retainer is also based on the consideration for this office not taking other cases (time spent).

3. Said retainer is non-refundable. This means that once the fee is paid, it shall be deemed earned. This does not mean that the retainer represents the total attorney fees due the firm (see 4 herein).

4. This retainer fee should not be interpreted as constituting the full reasonable fee to which the Lawyers may be entitled for services performed pursuant to an award of the Court or settlement.

Attorney Fee Determination

The determination of attorneys' fees shall be made as follows:

1. The attorney will keep time records in this matter and will not bill for any additional work unless and until the services rendered exceed the retainer amount.

2. The client is informed that the attorneys' hourly rate ranges from $250.00 to $500.00 an hour in the civil rights arena. The rate depends on the nature of the case, the tasks to be performed, the reputation of the lawyers, and other factors defined by the relative case law and the civil rights industry/arena/practice.

The hourly rate for Anthony P. Griffin will be billed at $300.00 an hour; associate attorneys will be billed at $150.00 an hour.

### Cost - We Will Front Cost, Unless Agreed Otherwise.
#### How Do We Get Our Money Back?

Costs are the Client's obligation, but the firm will front cost and bill for the costs.[2]  Costs reimbursement is due and payable thirty (30) days from any such billing.

### Guarantees - None

There are no guarantees held out with respect to the results of this litigation.

---

[2]Again, this is subject to approval of the Court and/or removal of the overbroad language affecting one's separate property.

## Withdrawal, Malfeasance, Breach of Contract

1. <u>Withdrawal</u>: Lawyers have an ethical obligation to represent the Client zealously within the bounds of the law, but the Lawyers also have an obligation, when material representation surfaces or where there is a breach of the terms of this contract by the Client, to withdraw from the representation of the Client. Nothing in this contract guarantees any results, including whether a suit will or will not be filed or any other matters that border on guarantees. The only guarantee relates to the representation within the confines of the Code of Professional Responsibility (zealously within the bounds of the law). It has been explained orally that the Lawyers' obligation to the Court and the rules of ethics require investigation and examination of the facts.

2. <u>Investigation/If No Case</u>: If the facts reveal no case exists, the Lawyer shall promptly advise the client and terminate the relationship. The retainer again is non-refundable.

3. <u>Investigation/Material Breach</u>: If the investigation reveals a material breach, lie, or misstatement by the client, the Lawyer will advise the Client as to how such breach affects the Lawyer's ability to proceed in

the representation. If termination is appropriate, the Lawyer(s) shall advise the client of her rights and shall promptly take any necessary acts to protect the Client (advise as to action) and the firm's rights. Again, the retainer shall be deemed non-refundable.

## Privilege of Firm

It shall be the exclusive privilege of Lawyers to determine when and where suits shall be filed. Again, Lawyers retain the discretion whether to obligate the office in the appeal process.

## Compromise

No compromise or settlement of Client's claims will be made without the consent of both Client and Lawyers.

## Power of Attorney

Lawyers are hereby granted full authority to sign all legal instruments, pleadings, drafts, authorizations and papers that shall be reasonably necessary to conclude settlement and/or reduce to possession any and all monies or other things of value due to Client under this claim as fully as Client could so do in person.

## Keeping the Client Informed

Lawyers agree to produce copies of documents as related to this litigation and to keep the client fully informed.

## Venue Lies in Galveston County

All sums due and payable at Lawyers' office in Galveston County, Texas.

SIGNED AND AGREED to on this the 3rd day of
NOV, 2009.

_____Barbara Schlein_____

BARBARA REGINA SCHLEIN
2106 PLEASANT PALM CIRCLE
LEAGUE CITY, TEXAS   77573
832.738.6047
EMAIL:  brschlein@msn.com

SIGNED AND AGREED to on this the 3rd day of
NOV, 2009.

ANTHONY P. GRIFFIN
A GRIFFIN LAWYERS
1115 MOODY
GALVESTON, TEXAS   77550
409.763.0386
1.800.750.5034
FACSIMILE NO. 409.763.4102
EMAIL:  agriffin@agriffinlawyers.com

c:word.schlein_barbara_retainer_contract

Cross-Appellant's Appendix98

## NOTICE OF CLIENTS

The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys.

Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint.

For more information, please call 1.800.932.1900. This is a toll-free phone call.

*Galveston Island*
*Galveston, Texas 77550*

November 3, 2009

Barbara Regina Schlein
2106 Pleasant Palm Circle
League City, Texas 77573

    RE:    CAUSE NUMBER 08FD2371; IN THE MATTER OF THE
            MARRIAGE OF BARBARA REGINA SCHLEIN AND ROBERT
            JOHN SCHLEIN; IN THE COUNTY COURT AT LAW, NO. 2;
            GALVESTON COUNTY, TEXAS

            (EXPLANATION OF CONTRACT AND LETTER AGREEMENT)

Ms. Schlein:

      Please find attached the contract of employment. This
letter is designed to explain our agreement and course of
action. Please note the following:

- **Contract relates to Family Matters but Contemplates Amending Complaint**. The contract relates to the family matter but contemplates adding claims and/or amending the pleading to address the abuse allegations the fraud in the marriage (forgery and misappropriation of identification that is the subject of pending criminal litigation. The retainer is set at an amount that it is anticipated that no additional fees will be charged.

- **Separate Lawsuits that will be filed at the time of substitution and/or prior to substitution. It is contemplated that a separate lawsuit will be brought against the builder at or near the substitution**. It is my belief the builder should be placed in a position of payment for his breach of contract and that the house. We can bring the lawsuit and add your spouse and a necessary

PLAINTIFF'S
EXHIBIT
2

PENGAD 800-631-6989

Cross-Appellant's Appendix100

A separate contract will be drawn for this purpose; no retainer is contemplated (contingent fee).

- <u>Separate Lawsuits that will be filed at the time of substitution and/or prior to substitution.</u> It is contemplated that a separate lawsuit will be brought against your spouse for the discovered abuse of minor child. It is my belief a separate lawsuit broadens the playing field and makes the other side defend outside of the divorce and Dibrell's court. Of course there will be an attempt to move the matter back to the divorce court, but it is my belief that the action of your child is an independent action. A separate contract will be drawn for this purpose; no retainer is contemplated (contingent fee).

- <u>Unsure and will need to research the Reitz.</u> I am currently unsure on the breach of fiduciary lawsuit. The grievance matter can be addressed by obtaining a grievance form. After learning the file better, I will supplement and advise.

If you have any questions, please inform.

Sincerely,

Anthony P. Griffin
A Griffin Lawyers
1115 Moody
Galveston, Texas 77550
409.763.0386
1.800.750.5034
Facsimile No. 409.763.4102

APG/
files

Encl. - Contract of Employment

HAND DELIVERED

c:word.schlein_barbara.client_transmittal